RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0032P (6th Cir.)
File Name: 03a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

        *v.*

JOHN A. CAMPBELL
(00-4134); KENNETH E.
GREEN (00-4583),
        *Defendants-Appellants.*

Nos. 00-4134/4583

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 99-00117—S. Arthur Spiegel, District Judge.

Argued: June 20, 2002

Decided and Filed: January 28, 2003

Before: BOGGS and BATCHELDER, Circuit Judges;
STEEH, District Judge.*

_____

**COUNSEL**

**ARGUED:** Susan M. Damplo, Ardsley, New York, Spiros
P. Cocoves, Toledo, Ohio, for Appellants. Kenneth L. Parker,

_____

* The Honorable George Caram Steeh, United States District Judge
for the Eastern District of Michigan, sitting by designation.

ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.  **ON BRIEF:**  Susan M. Damplo, Ardsley, New York, Spiros P. Cocoves, Toledo, Ohio, for Appellants.   Kenneth L. Parker, ASSISTANT UNITED STATES ATTORNEY, Cincinnati, Ohio, for Appellee.

_____

**OPINION**

_____

STEEH, District Judge.  John A. Campbell's and Kenneth E. Green's consolidated appeals seek review of criminal judgments and commitments entered against them by the district court.  Both appellants were convicted by a jury on May 31, 2000 under Count 1 of the February 17, 2000 Superseding Indictment (hereinafter "indictment") of conspiracy to possess marijuana with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846.  The jury also found appellant Green guilty under Count 2 of the indictment of attempted possession with intent to distribute, in violation of 21 U.S.C. § 846, and appellant Campbell guilty under Count 5 of the indictment of possession with intent to distribute, in violation of 21 U.S.C. § 841(a)(1).  For the reasons that follow, we AFFIRM IN PART the judgment of the district court, and REMAND IN PART, for appropriate application of the supervised release portion of appellant Campbell's sentence according to the United States Sentencing Guidelines.

I.

On December 2, 1999, Brian Haggerty, a corporal with the Missouri State Highway Patrol, effected a traffic stop on a van driven by Michael Lynce, a former defendant in these proceedings.  Haggerty's subsequent search of the vehicle turned up three suitcases, containing approximately 116 pounds of marijuana.  Lynce was arrested and agreed to cooperate with law enforcement.  During a post-arrest interview conducted at the station, Lynce told Drug

Enforcement Agency (hereinafter "DEA") Special Agent Raymond Guijas that he was en route from California to deliver marijuana to a Kenneth Green at the "Underground," a nightclub located in Cincinnati. Special Agent Fuijas testified that they then began preparing for a controlled delivery of the marijuana. DEA agents took Lynce and the marijuana to Cincinnati where Lynce contacted Green, as had been originally planned. Agents recorded the telephone calls between Green and Lynce. Audiotapes of various conversations Lynce had with Green prior to delivery were played at trial. Although much of Green's and Lynce's language was in code, Lynce testified at the trial that the conversations were about marijuana.

Lynce also testified at trial that he met Kenneth Green, whom he referred to as "Geezy," in Cincinnati several times prior to 1998, when he was "bodyguarding" for an Antonio Weathers. After that time, Lynce began making trips for Green, to California, to pick up marijuana for transport back to Cincinnati. At trial, Lynce testified that he made four trips to California for Green and that he served as Green's bodyguard. According to the testimony of DEA task force agent Thomas Catania, however, Lynce at one point estimated having made approximately eleven trips for Kenneth Green during the period from December 1998 to December 1999, transporting marijuana from the Ontario, California area to Cincinnati, Ohio. According to Agent Catania, Lynce had admitted transporting 780 pounds of marijuana, his largest load, just two weeks before his arrest. Lynce apparently revised his admissions later in the conversation, when he told Catania that he had made a total of nine runs during the one-year period, and that the most he had been paid for a load was $40,000. DEA Special Agent Brian Stine testified that Lynce advised authorities that he had made other drug deliveries to Green in the past, and that when Green was not available to accept shipments, Lynce took the marijuana to defendant John Campbell's residence located at 2017 Elm Street for Green.

Lynce met with DEA agents from the Cincinnati office, providing them with pager and cellular telephone contact numbers for Green, and cooperated with the agents' preparations for the controlled delivery of the marijuana. Tape recordings were made of conversations between Lynce and Green in which they agreed on a time and place for delivery. Surveillance was established at the nightclub prior to Lynce's arrival with the marijuana, and Lynce wore a microphone. Lynce ultimately delivered the marijuana, in suitcases, to Green's downtown nightclub on December 3, 1999.

After arriving at the nightclub, Lynce went inside the building and returned to his van with defendant John Campbell, who worked for Green at the nightclub. Lynce and Campbell took three pieces of luggage from the van into the business location. DEA agents then entered the building from the side and secured the area. Campbell's car, which at first he denied was his, was searched by the officers. Approximately 3.9 pounds of marijuana were found in the trunk.

Inside the building, the DEA agents announced the presence of law enforcement. According to agent Gary Peace, the smell of marijuana was present inside the building. While the agents were securing the first floor of the building, they heard loud noises in the kitchen. Agents found defendant Green in a dark area of the kitchen, from which they were able to call him out and secure an arrest. Campbell was also arrested at the nightclub.

A few days later, on December 7, 1999, a federal search warrant was executed by DEA agents at Campbell's apartment. Sabrina Ellis, Campbell's girlfriend, was at the apartment upon the agents' arrival. Ellis told agents that individuals had moved items from the downstairs apartment she shared with Campbell to an empty apartment upstairs. In Campbell's downstairs apartment, agents found an envelope addressed to Campbell with notations evidencing his

III.

For the foregoing reasons, we AFFIRM IN PART the judgment of the district court and REMAND IN PART, for renewed application of the supervised release portion of appellant Campbell's sentence according to the United States Sentencing Guidelines.

because any limited probative value was outweighed by the danger of unfair prejudice. Green relies on *United States v. Carter*, 969 F.2d 197, 200-01 (6th Cir. 1992), where the admission of income tax returns was found to have been an abuse of discretion, because the evidence was not probative of cocaine charges pending against the defendant. Green also contends that the shotgun shells were improper Fed. R. Evid. 404(b) material, as being evidence of "other crimes, wrongs, or acts," citing *United States v. Merriweather*, 78 F.3d 1070 (6th Cir. 1996), and *United States v. Hardy*, 228 F.3d 745, 747-751 (6th Cir. 2000).

As argued by the government, the district court inquired of the prosecutor concerning the relevancy of the shotgun shells at a sidebar following Green's objection. The prosecutor told the court that the shotgun shells were evidence of the defendants' need to protect the drugs at the "stash house." The district court overruled Green's objection, finding relevance in the fact that weapons are "tools of the drug trafficker's trade," and noting further that the jury had received a description of the purchase of a gun in the drug ledger. The government further cites to the Sixth Circuit precedent of *United States v. Gahagan*, 865 F.2d 1490, 1499 (6th Cir. 1989), where the court found that there was no abuse of discretion on the part of the district court in admitting firearms and ammunition in a drug trafficking case.

Given the probative value identified by the district judge, this court is convinced that there was no abuse of discretion below in admitting evidence of the shotgun shells. In addition, the abundant evidence supporting these drug convictions persuades us that there has been no showing of undue prejudice on the part of appellants. Therefore, to the extent the district court's admission of the shotgun shells was more prejudicial than probative, the error was harmless.

participation in drug transactions. In the upstairs apartment, searched after the agents determined that it was vacant and received the building owner's permission, agents found a drug ledger, scales, shotgun shells, an envelope addressed to Campbell, and marijuana residue. Fingerprints on the drug ledger matched Green's fingerprints. Ellis testified that she recognized many names in the ledger as individuals with whom Green and Campbell had dealings. The ledger listed marijuana transactions with those and other individuals, and included a notation referring to an expenditure for a gun.

Campbell and Green appeal from final orders of the district court imposing criminal sentences upon the defendants dated September 7, 2000 and December 14, 2000. Both defendants filed timely notices of appeal.

## II.

### *District Court's Application of 21 U.S.C. § 841(b)(1)(D)*

In their first common assignment of error, appellants contend that the district court incorrectly applied 21 U.S.C. § 841(b)(1)(D) in sentencing them to two consecutive five-year terms of incarceration. This claim was not argued by defendant Campbell to the district court, so the district court's imposition of the maximum penalty under 21 U.S.C. § 841(b)(1)(D) with respect to Campbell is reviewed for plain error. *United States v. Page*, 232 F.3d 536, 543 (6th Cir. 2000). Defendant Green advanced this argument in his sentencing memorandum, so review of Green's statutory construction claim will be conducted under the *de novo* standard. *United States v. Quintero*, 157 F.3d 1038, 1039 (6th Cir. 1998).

Appellants contend that the sentences imposed by the district court were greater than the statutory maximum permitted under 21 U.S.C. § 841(b), as the jury did not determine either the quantity of marijuana involved or remuneration. Appellant Campbell asserts, and the government agrees, that the Sixth Circuit has yet to address

the statutory maximum sentence for offenses involving an indeterminate amount of marijuana.

21 U.S.C. § 841(a) states:

Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally–
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....

21 U.S.C. § 841(a). Marijuana is a Schedule I controlled substance. 21 U.S.C. § 812(c). 21 U.S.C. § 841(b) provides the available sentences for individuals who violate 21 U.S.C. § 841(a). 21 U.S.C. § 841(b)(1)(D) defines the sentence for cases dealing with "less than 50 kilograms of marihuana," and includes the sentence applicable to an individual with a prior felony drug conviction. 21 U.S.C. § 841(b)(1)(D).[1] On the other hand, 21 U.S.C. § 841(b)(4) states that "[n]otwithstanding paragraph (1)(D) of this subsection, any person who violates subsection (a) of this section by distributing a small amount of marihuana for no remuneration shall be treated as provided in section 844 of this title and section 3607 of Title 18." 21 U.S.C. § 841(b)(4). Section 844 of Title 21 addresses offenses involving simple possession, and provides for a maximum sentence of imprisonment of one year. 21 U.S.C. § 844.

Green was convicted under counts 1 and 2 of the indictment. Count 1 charged the defendants with conspiracy to "possess with intent to distribute and to distribute a Schedule I controlled substance, to wit; marijuana, in violation of the laws of the United States, 21 U.S.C. § 841(a)(1) and (b)(1)(B)...[a]ll in violation of 21 U.S.C. § 846." Count 2 charged that defendant Green "did knowingly

---

[1] § 841(b)(1)(D) specifically excludes sentences prescribed according to "paragraphs (4) and (5) of this section."

drug-related evidence had been removed from Apartment No. 1, which was the subject to (sic) a search warrant, to Apartment No. 3, which was not, the agents chose to act deliberately and cautiously while investigating the occupancy status of Apartment No. 3....only after speaking to Ms. Ellis, Mr. Wilder, and Mr. Hawkins about the occupancy status of Apartment No. 3, did they proceed forward with the search and seizure.

The district court found that neither Hawkins, the building's owner, nor Wilder testified that they informed any agents that the apartment was being rented to Green, his brother, or anyone else. The district court concluded that "Agent Stine's and Agent Cerniglia's belief that Apartment No. 3 was vacant was objectively reasonable based on the facts provided to them as of December 7, 1999."

Contrary to Green's argument, an emergency did not need to exist before the agents entered the upstairs apartment. The district court did not clearly err in finding that agents reasonably believed that they had been given consent to search the apartment by individuals with apparent authority to give such consent. Therefore, the search of the upstairs apartment did not violate the Fourth Amendment. *Rodriguez*, 497 U.S. at 186.

*Whether the District Court Abused its Discretion in
Admitting Evidence of Shotgun Shells*

This claim of error made by appellant Green[5] is reviewed under an abuse of discretion standard. *United States v. Mack*, 258 F.3d 548, 555 (6th Cir. 2001). Green argues that admission of the shotgun shells was error and served only to inflame the jury. He contends that the shells should have been excluded as irrelevant, as there was no evidence that Green or Campbell possessed a shotgun or the shells, and

---

[5] Which is also adopted by appellant Campbell, pursuant to Fed. R. App. P. 28(i).

another, the consent is valid if 'the facts available to the officer at the moment...warrant a man of reasonable caution in the belief that the consenting party had authority over the premises." *United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996) (citing *Rodriguez*, 497 U.S. at 188, and *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). Thus, there is no violation of the Fourth Amendment if, under the totality of the circumstances, the officer performing the search has relied in good faith on a person's apparent authority. *Rodriguez*, 497 U.S. at 188-89.

The agents in this case executed a federal search warrant on Campbell's vehicle following Campbell's initial denial of ownership of the vehicle. Four pounds of marijuana were seized from the vehicle upon execution of the warrant. Another search performed pursuant to a warrant was executed on Campbell's first floor apartment. According to DEA Agent Stine, Campbell's girlfriend, Sabrina Ellis, told the agents during the search that an upstairs apartment was vacant and that people had been moving things there from her apartment. Agent Stine also testified that a Mr. Wilder, who worked for the building's owner, told the agents the upstairs apartment had been vacant for approximately one and a half months. Agent Stine testified further that the building's owner, via a phone conversation, granted permission to search the vacant apartment.

Agent Cerniglia, Agent Stine's superior, likewise testified that Wilder informed the agents that no one was leasing the apartment, and that it had been vacant for a month and a half.

The district court denied defendant Green's motion to suppress, finding in its written opinion that Green's witnesses:

did not specifically contradict the agents' testimony in relation to the circumstances that were present before them on December 7, 1999....[w]hen the agents on the scene were informed by Ms. Ellis of the possibility that

and intentionally, unlawfully attempt to possess with intent to distribute a Schedule I Controlled Substance: to wit, marijuana. In violation of 21 U.S.C. § 846." Campbell was convicted under counts 1 and 5 of the indictment. Count 1 is set forth above; Count 5 charged that defendant Campbell "did knowingly, intentionally, unlawfully possess with intent to distribute marijuana, a Schedule I Controlled Substance. In violation of 21 U.S.C. § 841(a)(1)."

Appellants contend that 21 U.S.C. § 841(b)(4) is the least stringent statutory maximum, and cite to *Apprendi v. New Jersey*, 530 U.S. 466 (2000), for the proposition that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. Appellants also cite to *United States v. Page*, 232 F.3d 536, 543-44 (6th Cir. 2000), asserting that a determination on drug quantity significantly impacts the sentence imposed under 21 U.S.C. § 841, and to *United States v. Ramirez*, 242 F.3d 348, 351-52 (6th Cir. 2001), for its holding that absent a jury determination on drug quantity, a defendant sentenced pursuant to 21 U.S.C. § 841(a) must be sentenced under the lowest applicable statutory maximum.

Under Count 1 of the indictment, Campbell and Green were convicted of conspiracy to possess with intent to distribute marijuana. The penalty provision appellants contend applied to them addresses only "distribution of a small amount of marijuana for no remuneration." 21 U.S.C. § 841(b)(4). However, defendants did not have to distribute marijuana to be found guilty of conspiracy. Rather, defendants' mere agreement to possess the marijuana with an intent to distribute was sufficient to support their conspiracy convictions. *United States v. Pearce*, 912 F.2d 159, 161 (6th Cir. 1990). For that reason, 21 U.S.C. § 841(b)(4), which does not generally address violations of § 841(a) as do the preceding penalty provisions of § 841(b), but which contemplates "distribution... for no remuneration," does not,

by its terms, apply to the defendants' convictions under Count 1. Because the defendants were convicted for conspiracy and given a sentence that did not exceed the prescribed statutory maximum for that crime, their reliance on *Apprendi* is misplaced.

Turning to the appellants' arguments regarding their convictions for possessing marijuana with the intent to distribute, under Counts 2 and 5, a recent decision in the Second Circuit is directly on point. *United States v. Outen*, 286 F.3d 622 (2nd Cir. 2002), a decision issued April 12, 2002, specifically addresses the marijuana sentencing provisions of 21 U.S.C. § 841. That court discusses the distinction between § 841(b)(1)(D), providing for a penalty of up to five years for a violation involving less than 50 kilograms of marijuana "except as provided in paragraphs (4) and (5) of this subsection," and § 841(b)(4), applicable to distribution for no remuneration. The *Outen* court reasoned that § 841(b)(4) is a mitigating exception to the previous sections of the statute. As in this case, the *Outen* defendants argued that § 841(b)(4) was the "first rung of the penalty ladder for the offense of distribution of marijuana." *Outen*, 286 F.3d at 638. The Second Circuit looked to the language of § 841(b)(4), and held that, rather than the baseline statutory provision which is subject to increases of the "prescribed statutory maximum," § 841(b)(4) reduces the prescribed statutory maximum of five years as set forth in § 841(b)(1)(D). *Outen*, 286 F.3d at 638.

In making its determination, the *Outen* court looked to legislative history along with the rationale of *Apprendi*:

> *Apprendi*, however, specifically noted and reaffirmed the distinction between "facts in aggravation of punishment and facts in mitigation." *Apprendi*, 530 U.S. at 490 n.16. The Court there noted that where a judge finds a fact which allows a defendant to "escape the statutory maximum" attached to a jury verdict, that finding by the judge "neither expos[es] the defendant to a deprivation of

### *Whether the District Court Erred in Denying Defendant Green's Motion to Suppress Evidence Found During a Search of an Apartment Performed Without a Search Warrant*

In reviewing a district court's denial of motion to suppress evidence, this court reviews the district court's findings of fact for clear error, and its legal findings *de novo*. *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999); *United States v. Harris*, 192 F.3d 580, 584 (6th Cir. 1999). The evidence is reviewed in the light most likely to support the decision of the district court. *United States v. Health*, 259 F.3d 522, 528 (6th Cir. 2001); *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999).

Green contends that the district court erred in denying his motion to suppress the fruits of a warrantless search of the vacant apartment upstairs from Campbell's residence on Elm Street in Cincinnati. Green asserts that the district court committed clear error in finding that the totality of the circumstances would have indicated to a reasonable officer that the apartment was either vacant or abandoned, as neither the building owner nor his agent told the officers the apartment was vacant. Green maintains that the owner's representative told the agents that Green had paid rent for the month of December 1999. Furthermore, Green argues, the owner's agent was told by the DEA agents that they had a warrant, without specifying for which apartment.

### *Voluntary Consent/Apparent Authority Exception*

A prohibition on entry of a person's home is inapplicable where voluntary consent has been given to the search by the owner of the home or property. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). If consent is given to search by an individual who has apparent authority, the Fourth Amendment's prohibition against a warrantless search does not apply. *Illinois v. Rodriguez*, 497 U.S. 177, 186 (1990). "When one person consents to a search of property owned by

Many things might happen during the course of the trial which would prevent the presentation of all the evidence described in advance. Certainly not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given.

*Frazier v. Cupp*, 394 U.S. 731, 736 (1969).

The district court twice instructed the jury that the statements of attorneys were not evidence:

* * *

The evidence in this case includes only what the witnesses said while they were testifying under oath; the exhibits that I allowed into evidence; the stipulations that the lawyers agreed to; and the facts that I have judicially noticed.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

* * *

Counsel for defendants made no objection to the prosecution's statements during the trial, the statements were made prior to the evidence phase of trial, and counsel for defendants had a chance to address both the opening statement and the proofs during their closing argument.

On this record, there is no indication that the jury was unable to follow the instructions of the court. Consequently, the defendants' right to a fair trial was not compromised. The trial court did not commit plain error in denying defendants' motions for mistrial.

liberty greater than that authorized by the verdict according to statute, nor is the judge imposing upon the defendant a greater stigma than that accompanying the jury verdict alone." *Id*. The Court thereby expressly stated that the concerns animating its decision were absent in such a mitigating scheme. Defendant's interpretation of *Apprendi*, in contrast, would largely prohibit Congress from establishing facts in mitigation of punishment, because any attempt to do so would necessarily result in having to submit to the jury the question of the *negating* of these mitigating facts in order to support a punishment greater than that prescribed in the mitigating provision....[t]his would effectively rewrite an otherwise valid criminal statute-something neither done nor authorized in *Apprendi*. We do not believe *Apprendi* in any way calls into question the power of Congress to establish mitigating exceptions to otherwise complete offenses.

*Outen*, 286 F.3d at 638.

This court adopts the reasoning and holding in *Outen*. The district court's application of § 841(b)(1)(D) as the statutory maximum penalty for an indeterminate amount of marijuana is consistent with *Outen*, and will be affirmed.

### *Whether the District Court Correctly Imposed the Supervised Release Portion of Defendant Campbell's Sentence*

The government admits that Campbell's four-year term of supervised release exceeds the maximum three-year term of supervised release authorized by 21 U.S.C. § 841(b)(1)(D), as set forth in U.S.S.G. § 5D1.2(a)(2), and agrees that this court must remand for the purpose of setting a new term of supervised release. Accordingly, this matter will be remanded for the limited purpose of imposing a period of supervised release that does not exceed the three-year maximum.

*Whether the District Court's Imposition of Two Five-Year
Consecutive Sentences was Appropriate under United
States Sentencing Guidelines*

This court's standard of review for the district court's application of the United States Sentencing Guidelines is *de novo*. *United States v. Moses*, 106 F.3d 1273, 1277 (6th Cir. 1997). The maximum sentence under 21 U.S.C. § 841(b)(1)(D) for each drug conviction is 60 months. Campbell and Green were each convicted on two drug counts. The recommended sentences for both Campbell and Green pursuant to the Sentencing Guidelines' combined offense level calculations were greater than 120 months. As set forth in the U.S. Sentencing Guidelines, § 5G1.2:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

U.S.S.G. § 5G1.2(d).

Appellants' argument that U.S.S.G. § 5G1.1(a) limits their sentences to 12 months is misplaced, because that provision addresses single counts of conviction and includes language stating "[w]here the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence." As stated above, appellants were each convicted under two counts of the indictment, and each conviction carried a maximum sentence of 60 months pursuant to the applicable statutory penalty provision. For the foregoing reasons, it is this court's determination that under U.S.S.G. § 5G1.2(d), consecutive 60-month sentences were appropriately imposed by the District Court.

*Whether the Opening Statement of the Prosecutor Violated
the Defendants' Right to a Fair Trial*

Claims alleging the impairment of a substantial right of the appellants, although not brought to the attention of the trial court, are reviewed for plain error. Fed. R. Crim. P. 52(b); *United States v. Page*, 232 F.3d 536, 543 (6th Cir. 2000); *see also United States v. Young*, 470 U.S. 1, 15 (1985).

Campbell argues that the prosecutor's opening statement contained facts not established during the evidence phase of the trial, violating Campbell's right to a fair trial.[4] First, Campbell points to the prosecutor's summary of his expected testimony of Bernita Bell. This summary, Campbell asserts, was intended to show that Michael Lynce was not a drug dealer, but simply a courier for Green. Campbell further argues that the prosecutor suggested to the jury that Green attempted to intimidate Bell as a trial witness but that no evidence of intimidation was presented during trial. Finally, Campbell objects to the prosecutor's statements about Campbell's behavior (i.e. "taking notice" of his surroundings) when he carried the suitcases into the nightclub, contending that no DEA agent so testified to the jury.

The government's response to these arguments demonstrates that the prosecutor did intend in good faith to call Bernita Bell as a witness, but that she became unable to testify at trial. The government also argues that the court's jury instructions precluded any potential prejudice the prosecutor's opening statement might have had on the jury.

The government cites *United States v. Tines*, 70 F.3d 891, 898 (6th Cir. 1995) (citing *Zafiro v. United States*, 506 U.S. 534, 540-41 (1993)), for the proposition that the jury is presumed to follow correctly the instructions of the court as given. As the Supreme Court has recognized:

---

[4] Green also adopts this argument, citing Fed. R. App. P. 28(i) and *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996).

American, the reasons will be just the same.

The Court:    Well, as I said, the panel–she's the only African-American on the panel. Both the defendants are African-American, counsel Carl Lewis for Defendant Campbell is an African-American. The prosecutor trying this case on behalf–

Mr. Parker:    And I'm certainly African-American.

The Court:    –is an African-American, and I believe because of the concerns that the defendants have expressed and also accepting the government's position it is absolutely in good faith–if I have that discretion, I would deny the challenge and permit this lady to remain on the jury.

After a 15-minute recess, the district court indicated at a sidebar conference that it had reviewed the Sixth Circuit decision of *United States v. Davis*, 809 F.2d 1194, 1202 (6th Cir. 1987), and the Supreme Court's *Purkett* decision, *supra*, and determined that the government's reasons for excusing prospective juror number eight were in good faith and race neutral.

The district court considered the reasons stated by the prosecutor following his peremptory challenge of prospective juror number eight, and was in a unique position to credit or discredit the prosecutor's argument. The reasons advanced by the government were valid under *Batson* and its progeny. It is this court's finding that the district court's decision was not clearly erroneous.

*Whether the District Court Erred in Determining that Defendant Campbell Was Responsible for 760.59 Kilograms of Marijuana*

This court reviews the calculation of drug quantity made by the district court for clear error. *United States v. Owusu*, 199 F.3d 329, 338 (6th Cir. 2000). If an exact quantity of drugs is uncertain, a trial court's estimate of the drug quantity must be supported by competent evidence in the record. *Id.* (citing *United States v. Ward*, 68 F.3d 146, 149 (6th Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996)). Testimony of a coconspirator may be sufficient to enable a district court to determine a drug quantity for which another coconspirator may be held accountable. *Id.* at 339 (citing *United States v. Pruitt*, 156 F.3d 638, 647 (6th Cir. 1998), *cert. denied*, 525 U.S. 1091 (1999)).

The district court found that defendant Campbell was responsible for 760.59 kilograms of marijuana. Pursuant to the recommendation of the probation department, the district court held Campbell responsible only for drugs transported from the time Lynce made his fourth trip to California.[2] Appellant Campbell does not dispute that the suitcases transported by Lynce on his last trip contained approximately 116 pounds of marijuana. Lynce's trial testimony included the statement that he was owed $90,000.00 by Green for transporting marijuana since his fourth trip, calculated at a rate of $50.00 per pound. Campbell's girlfriend, Sabrina Ellis, testified that large bags containing marijuana were brought into the apartment she shared with Campbell, and that she recognized names in the drug ledger of people with whom Campbell had drug transactions.

Evidence of drug quantity "must have a minimal level of reliability beyond mere allegation." *United States v. West*,

---

[2]Campbell was incarcerated until Lynce made his fourth trip to California.

948 F.2d 1042, 1045 (6th Cir. 1991); *see also Owusu*, 199 F.3d 329, 338 (citing *West*, 948 F.2d at 1045). Here, reliable evidence supports the district court's finding that Campbell was responsible for 760.59 kilograms of marijuana. The district court did not clearly err.

*Whether the District Court Erred During Jury Selection by Allowing the Prosecutor to Exercise a Peremptory Challenge Against a Black Venire Member*

The standard of review for Campbell's *Batson* claim[3] is that of clear error. *United States v. Hill*, 146 F.3d 337, 341 (6th Cir. 1998); *United States v. Gibbs*, 182 F.3d 408, 439 (6th Cir. 1999). The conclusions of the district court judge regarding the prosecution's asserted neutral explanations for striking a juror are given broad deference. *United States v. Ferguson*, 23 F.3d 135, 141 (6th Cir.), *cert. denied sub nom. Shackelford v. United States*, 513 U.S. 900 (1994).

A party cannot use a peremptory challenge to excuse a prospective juror on the basis of that individual's race. *Batson v. Kentucky*, 476 U.S. 79 (1986). As set forth in *Purkett v. Elem*, 514 U.S. 765, 768 (1995), a district court applies a three-step process to determine whether a *Batson* violation has occurred. The defendant must first make a *prima facie* showing of discriminatory use of a peremptory challenge. If a *prima facie* showing is made, the government is required to offer a race-neutral explanation for the challenge. The district court must then determine whether the defendant has established intentional discrimination. *Id.*

Prospective juror number eight, the only African-American venire member, was challenged by the government based on her age, educational level, single status, and because she resided in the neighborhood where the events giving rise to the complaint took place. She was one of five peremptory

---

[3]This claim is also adopted by appellant Green pursuant to Fed. R. App. P. 28(i).

challenges exercised by the prosecution. In fact, when the prosecutor first brought up his intention to challenge prospective juror number eight, the court stated it was going to deny the challenge:

* * *

The Court:    I'm going to deny the challenge.

Mr. Parker:  May I speak?

* * *

Mr. Parker:  Okay. When I was looking at jurors, I was looking for stability and so forth: Their job, their – the marital status, the education. She was not passing any one of those factors. Was not a high school graduate. Very young. The living in the neighborhood, yes. While that may be extraneous, that is something I took into account. And now to be told, well, because she's African-American, that that (sic) overrides everything. Your Honor, I would have been striking a number of other jurors for things when they had fulfilled more criteria on my list than she did. I couldn't put a check in any of my criteria, Your Honor. This was not something in which we sat down this morning and said: Oh, we're going to strike these people. I have a number of people here, Your Honor, which I had deemed that I did not want on this jury based on them being unfulfilled. I could not fill in the check marks, and she was one of those people. And actually, I have another individual on the list, Your Honor, who I'll have to strike off this jury next. And while she's not African-