RECOMMENDED FOR PARTIAL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0253p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

MICHAEL OSTRANDER (04-1157);
ROBERT OSTRANDER (04-1380),

*Defendants-Appellants.*

Nos. 04-1157/1380

>

—————————

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 01-00218—Robert Holmes Bell, Chief District Judge.

Argued: January 27, 2005

Decided and Filed: June 10, 2005

Before: BOGGS, Chief Judge; and KENNEDY and MARTIN, Circuit Judges.

—————————

## COUNSEL

**ARGUED:** Lawrence J. Phelan, HAEHNAL & PHELAN, Grand Rapids, Michigan, Jeffrey J. O'Hara, Grand Rapids, Michigan, Christopher P. Yates, WILLEY, CHAMBERLAIN & YATES, Grand Rapids, Michigan, for Appellants. Timothy P. VerHey, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Lawrence J. Phelan, HAEHNAL & PHELAN, Grand Rapids, Michigan, Jeffrey J. O'Hara, Grand Rapids, Michigan, Christopher P. Yates, WILLEY, CHAMBERLAIN & YATES, Grand Rapids, Michigan, for Appellants. Timothy P. VerHey, UNITED STATES ATTORNEY, Grand Rapids, Michigan, for Appellee.

—————————

## OPINION

—————————

BOGGS, Chief Judge. In need of money to jump-start his faltering drug business, Robert Ostrander decided to murder one of his customers, Hansle Andrews, and he recruited his brother, Michael, to assist him. Robert lured Andrews into the woods with the promise of an incredible deal and there, with Michael's help, shot and killed him. In separate trials, juries found both brothers guilty of (1) conspiracy to distribute cocaine and marijuana; (2) murder with a firearm during and in relation to a drug trafficking crime; and (3) murder with a firearm during a violation of the Hobbs Act. They were each sentenced to life in prison without possibility of release. Both brothers appeal the second and third convictions. In addition, Michael appeals the denial of his motion to suppress

1

the confession he gave to the FBI and the district judge's refusal to sentence him to a term of years on the murder charge rather than the life sentence recommended by the jury or to compel the Government to make a motion for downward departure based on substantial assistance. He seeks a remand for resentencing. We affirm the district judge on all points, writing for publication only with regard to the sentencing discretion issue. All other issues raised by Appellants are addressed and decided in an unpublished appendix to this opinion.

**I**

Robert Ostrander dealt drugs, primarily marijuana, using his younger brother, Michael, his wife, Misty, and his friend, Jon Mercer, as his primary salesmen. After a long period spent building his business, Robert Ostrander lost a great deal of money sometime during the winter of 1999-2000. Without operating capital, Robert Ostrander could not purchase drugs, and as a consequence his salesmen had nothing to sell.

In early summer 2000, Robert decided to rebuild his drug business by luring a buyer with ready cash into a supposed marijuana deal so lucrative that the buyer could not refuse and then robbing and killing him. Robert identified as his victim Hansle Andrews, a man to whom he had regularly sold large quantities of marijuana and who was known for having ready money. Robert first proposed his plan to his friend, Jon Mercer, who refused to be part of the killing but who did eventually plead guilty to being an accessory after the fact. When Mercer turned him down, Robert looked to his brother Michael.

The killing went according to the plan Robert had outlined for Mercer and had explained to Michael at least a day or two in advance of the murder. On August 12, 2000, Michael borrowed his girlfriend's car and drove out to the designated site in the middle of a secluded, wooded area. He waited there for Robert to arrive with Andrews. Michael had knowingly transported a gun and two pairs of latex gloves. At his trial, Robert testified that he personally placed the gun in the car. When Robert and Andrews arrived in Andrews's truck, Michael distracted Andrews with small talk while Robert went to Michael's car, put on a pair of gloves, and got the gun. Returning to Andrews, he asked whether the latter had brought the money, and when Andrews reached for his money, Robert shot him twice in the chest then once in the mouth.[1] Michael and Robert buried the body in the woods. Robert then drove Andrews's truck to Las Vegas in order to dispose of it. That evening Michael made arrangements with Mercer to get rid of Andrews's clothes, and he, along with his girlfriend and another friend, took the gun and dropped it off a remote pier.

As will be discussed further in the appendix to this opinion, the plan began to unravel quickly, and Michael and Robert were eventually indicted in a third superseding indictment of (1) conspiracy to distribute cocaine and marijuana, in violation of 21 U.S.C. § 846; (2) murder with a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c) and (j); and (3) murder with a firearm during a violation of the Hobbs Act, 18 U.S.C. § 1951. On February 21, 2003, the United States filed a notice of its intent to seek the death penalty against both defendants. The two defendants were tried separately.

In the penalty phase of Michael's trial, the jury was given the choice of the death penalty, life in prison without possibility of release, or any term of years at the discretion of the court. The jury chose life in prison without possibility of release. Prior to sentencing, Michael asked the court to compel the United States to file a motion for downward departure under 18 U.S.C. § 3553(e) on the basis of the substantial assistance Michael gave by testifying at his brother's trial. The court denied the motion on the grounds that Michael did not testify in response to a plea agreement with

---

[1]There was some testimony that Michael had claimed to have shot Andrews at least once. However, the bulk of the evidence suggests that Robert was the sole shooter.

the government and that it therefore had no discretion to compel a motion. The court accordingly sentenced Michael to life in prison without possibility of release. Michael timely appeals the judge's refusal either to sentence him to a term of years on his own discretion or to compel the prosecution to move for a downward departure on the basis of substantial assistance.

## II

Michael makes two arguments that he should not have been sentenced to life in prison. First, he claims that the district judge had the discretion to override the jury's sentence and instead sentence him to a term of years under the Sentencing Guidelines. Second, he claims that if the judge had such discretion, he should have exercised it to compel the Government to make a motion for substantial assistance in light of the testimony Michael gave at his brother's trial. We find that the district judge was correct to hold that he was required to impose the jury's recommendation of life imprisonment, and therefore we do not consider the denial of Michael's motion to compel.

We review *de novo* the district judge's interpretation of the relevant statutes. *United States v. Campbell*, 317 F.3d 597, 601 (6th Cir. 2003).

Michael was indicted and convicted under 18 U.S.C. § 924(j) for causing the death of Hansle Andrews with a firearm in the course of a drug trafficking offense. That section reads in relevant part:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall– **(1)** if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . . .

Section 1111(a) of Title 18 defines murder and section 1111(b) distinguishes between first-degree and second-degree murder. First-degree murder, it instructs, is punishable only "by death or by imprisonment for life." 18 U.S.C. § 1111(b). Second-degree murder is punishable by life or any term of years in prison. *Ibid.*

Michael was sentenced under the Federal Death Penalty Act, 18 U.S.C. § 3593(e), according to which the jury, after considering the aggravating and the mitigating factors, "by unanimous vote . . . shall recommend whether the defendant should be sentenced to death, to life imprisonment without possibility of release or some other lesser sentence." *Id.* Having been instructed on these three options, the jury chose to recommend life in prison without possibility of release. Once the jury made its recommendation, 18 U.S.C. § 3594 guided the judge in the imposition of the sentence. That statute reads in pertinent part:

> Upon a recommendation under section 3593(e) that the defendant should be sentenced to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly. *Otherwise*, the court shall impose any lesser sentence that is authorized by law.

(Emphasis added).

Michael argues that the judge had the discretion to ignore the jury's sentencing recommendation and instead sentence him to a term of years. He asserts that the statute of conviction, 18 U.S.C. § 924(j), authorized the imposition of imprisonment for a term of years, so that if § 3594 removed the judge's discretion to exercise that possible penalty, the "term of years language" in § 924(j) would be surplusage. As part of this argument, he contends that the reference to 18 U.S.C. § 1111 in § 924(j) serves a definitional purpose only and should not be used for penalty

purposes.  He also argues that the words "recommend" in § 3593(e) and "shall sentence . . . accordingly" in § 3594 should be read as precatory rather than mandatory.

Following the Fourth Circuit, we agree with Michael that § 924(j) "incorporates only the definition of murder contained in section 1111[(a)]." *United States v. Young*, 248 F.3d 260, 275 (4th Cir. 2001).  This interpretation prevents a first-degree murder conviction under § 924(j) from becoming a de facto mandatory minimum life sentence.  However, this alone does not give the district court judge discretion to override the "recommendation" of the jury and sentence the defendant to a term of years on his own volition.  *See* 18 U.S.C. § 3593(e).

In the case at hand, the jury had the option to permit the judge to sentence Michael to a term of years but chose instead to recommend that he receive life in prison without possibility of release.  Prior to sentencing, Michael argued that the judge could override that recommendation and sentence him to a term of years if the Government made a motion for downward departure on account of the substantial assistance Michael gave in testifying against his brother at the latter's trial.  The district judge disagreed, interpreting the language of § 3594, ("[u]pon a recommendation under section 3593(e) that the defendant should be sentenced to death or life imprisonment without possibility of release, the court shall sentence the defendant accordingly"), to mean that once the jury recommended a life sentence for Michael, he was obligated to apply that sentence, and he had no discretion to deviate.  Michael, by contrast, argues that the "sentence accordingly" language in § 3594 refers to the statute of conviction and not to the jury's recommendation under § 3593(e).  Such a reading would render the following sentence of § 3594, "[o]therwise, the court shall impose any lesser sentence that is authorized by law," surplusage because the statute of conviction already includes a provision for a possible sentence to a term of years.

Michael also contends that the "recommend" language in §§ 3593(e) and 3594 is precatory rather than binding on the judge.  The case law does not support this interpretation.  *See Jones v. United States*, 527 U.S. 373, 380-81 (1999) (stating that the court has discretion to sentence to a term of years only when the jury fails to reach a unanimous verdict of death or life imprisonment); *United States v. Jackson*, 327 F.3d 273, 286 (4th Cir. 2003) ("If such a recommendation [for the death penalty] is made, the court must follow the recommendation and sentence the defendant to death."); *In re United States*, 197 F.3d 310, 311 (8th Cir. 1999) (factfinder makes ultimate choice of sentence).  Furthermore, the judge instructed the jury that if they chose to recommend the death penalty or life imprisonment, he was obligated to impose that sentence.  Therefore, they were not under any illusions as to their responsibility.  *See Romano v. Oklahoma*, 512 U.S. 1, 8 (1994) ("the jury must not be misled regarding the role it plays in the sentencing decision.").  Finally, even if the jury's recommendation were merely advisory, § 3594's instruction that the judge "shall sentence the defendant accordingly" turns it into a mandate.  Michael's assertion that "shall" does not create a mandatory command simply flies in the face of standard interpretation.  *See*, *e.g*., *Lopez v. Davis*, 531 U.S. 230, 241 (2001) ("a mandatory 'shall' . . . impose[s] discretionless obligations"); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26, 35 (1998) ("the mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion."); *Hewitt v. Helms*, 459 U.S. 460, 471 (1983) (calling *shall* "language of an unmistakably mandatory character").

At sentencing, the jury was appropriately instructed that it could recommend a sentence of death, life without the possibility of release, or a term of years, pursuant to § 924(j).

### III

For the foregoing reasons, we find that the trial judge correctly held that he had no discretion to sentence Michael to imprisonment for a term of years after the jury had recommended life in prison without possibility of release, and we **AFFIRM** the sentence imposed.