NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0576n.06

No. 09-5882

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 05, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| KENDRICK BUGG, a.k.a. Kenny Bugg, | ) | |
| | ) | O P I N I O N |
| *Defendant-Appellant.* | ) | |
| | ) | |

BEFORE:     COLE, GILMAN, and WHITE, Circuit Judges.

COLE, Circuit Judge.   Defendant-Appellant Kendrick Bugg appeals his conviction and sentence for armed robbery, in violation of 18 U.S.C. § 1951, and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).  As to his conviction, Bugg alleges that the government violated his rights to a speedy trial and due process, and that it convicted him based on insufficient evidence.  As to his sentence, Bugg alleges that the trial court committed numerous errors in determining an appropriate sentence and in granting access to discovery documents.  For the reasons that follow, we AFFIRM his conviction, VACATE his sentence, and REMAND for resentencing.

1

## I. BACKGROUND

On March 8, 2002, Bugg was arrested on suspicion of robbing a Gas-N-Go convenience store earlier that same day ("the Gas-N-Go robbery"). Following a jury trial, he was convicted and sentenced to 324 months in prison, which he appealed unsuccessfully. *United States v. Bugg*, 105 F. App'x 25 (6th Cir. 2004). On December 12, 2006, while Bugg was serving his sentence for the Gas-N-Go robbery, he was indicted for an additional armed robbery of White's Western Auto ("the Western Auto robbery") that took place three months before the Gas-N-Go robbery, on December 29, 2001. The indictment was issued just days before the statute of limitations for the Western Auto robbery expired. Bugg was not arraigned until April 3, 2008, sixteen months later. A trial date was set for June 2008. After two continuances at Bugg's request, the trial commenced in December 2008.

Prior to trial, the government gave notice of its intent to introduce testimony governed by Rule 404(b) of the Federal Rules of Evidence. The notice advised the district court and Bugg's counsel that the prosecutor planned to introduce testimony regarding three other armed robberies allegedly committed by Bugg, although he had been convicted of only one of them. At trial, the prosecutor summarized this evidence in his opening statement and, there being no objection lodged from Bugg, later attempted to elicit testimony from a witness regarding these robberies. Bugg objected to this testimony and, following an in camera hearing, the district court excluded the evidence under the Federal Rules of Evidence, Rules 403 and 404(b). Both at the opening and at the close of trial, the district court instructed the jury that the lawyers' questions and arguments are not evidence and should not be considered when reaching a verdict.

The prosecutor elicited testimony on three other matters. To establish the connection between the robbery and interstate commerce, the owner of Western Auto testified that he had obtained some of Western Auto's merchandise from out of state. To illustrate the gun used in the crime, the prosecutor showed a different gun to the two eyewitnesses, asking if it resembled the gun used in the robbery. To establish the identity of the perpetrator, the prosecutor introduced a fingerprint taken from a lotion bottle, which matched Bugg's fingerprint. Notably, the eyewitnesses could not identify Bugg as the perpetrator. But they testified that the lotion bottle hosting the fingerprint was kept where customers could not access it, and that the perpetrator had handled the lotion bottle during the robbery. In his defense, Bugg admitted into evidence a picture of himself taken several months after the Western Auto robbery, without further commentary, argument, or testimony. He did not move for a judgment of acquittal or a new trial at any point. The jury convicted Bugg on both counts.

The Presentence Report ("PSR") indicated that Bugg faced a Guidelines range of 510-562 months for the Western Auto robbery. The range included a recommended sentence of 210-262 months for the § 1951 violation, which the court had the discretion to impose concurrently or consecutively to Bugg's extant 324-month sentence for the Gas-N-Go robbery, and a mandatory 300-month sentence for a "second" § 924(c) violation, which the court had to impose consecutively to any extant or newly imposed sentence. The PSR noted that, had the government indicted Bugg for both robberies at the same time, the combined Guidelines range for both robberies would have been 594-646 months. As a consequence of the government's decision to indict Bugg for the first robbery

only after he had been tried, convicted, and sentenced in the second, Bugg instead faced a cumulative sentence of 624-886 months for the two robberies.

Prior to sentencing, Bugg secured new counsel and filed a number of motions advancing different rationales for imposing a lighter sentence. Among them, one requested that the district court impose the portion of the sentence addressing the § 1951 violation to run concurrently with his Gas-N-Go robbery sentence, for a cumulative total of 624 months imprisonment. The district court imposed a 210-month sentence for the § 1951 violation and a 300-month sentence on the § 924(c) violation, to be served consecutively, totaling 510 months for the Western Auto robbery. The court ordered that just ten of these months be served concurrently with the Gas-N-Go robbery sentence, and that the remainder be served consecutively, for a total effective sentence of 824 months for the two robberies, or just shy of sixty-nine years. This appeal followed.

## II. ANALYSIS

### A. Challenges to the Guilt Phase

Bugg alleges that he did not receive a fair trial due to myriad prosecutorial and trial court errors. He finds fault with the timing of the trial, the prosecutor's opening statements, the evidence introduced at trial, and the sufficiency of the evidence supporting his convictions.

#### 1. Speedy Trial Violation

Bugg claims that the government violated his Sixth Amendment right to a speedy trial by delaying his indictment until nearly five years after the crime and failing to arraign him for an additional sixteen months. Bugg has waived his right to challenge pre-indictment delay by failing to raise this claim before trial. *See United States v. Brown*, 498 F.3d 523, 527-30 (6th Cir. 2007).

He has not waived his right to challenge the delay between indictment and trial, however, because the Supreme Court has held that a defendant cannot waive his Sixth Amendment right to a speedy trial through inaction alone. *See Barker v. Wingo*, 407 U.S. 514, 528 (1972).

In speedy-trial claims, we review questions of law de novo and questions of fact for clear error. *Brown*, 498 F.3d at 530. We evaluate Sixth Amendment speedy-trial claims under the four-factor *Barker* test, taking into account "(1) length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant." *Id.* (citing *Barker*, 407 U.S. at 530). A delay of more than one year between indictment and trial, if not attributable to the defendant, is "presumptively prejudicial and triggers application of the remaining three factors." *United States v. Young*, 657 F.3d 408, 414 (6th Cir. 2011) (holding that a delay of more than one year is presumptively prejudicial); *United States v. Howard*, 218 F.3d 556, 564 (6th Cir. 2000) (disregarding a delay attributable to defendant). None of the *Barker* factors alone suffices to establish the deprivation of the defendant's speedy-trial right, however. *Barker*, 407 U.S. at 533; *Young*, 657 F.3d at 414. Rather, we must undertake a "difficult and sensitive balancing process" of the *Barker* factors and other relevant circumstances to determine whether the right has been violated. *Barker*, 407 U.S. at 533; *Young*, 657 F.3d at 414.

Because Bugg was not responsible for the sixteen-month delay between indictment and arraignment, nor the additional two months between his arraignment and initial trial date, the delay is presumptively prejudicial, requiring us to examine the remaining factors.

### a. Government's Justification for the Delay

The government bears the burden of justifying the length of any pre-trial delay. *United States v. Jackson*, 473 F.3d 660, 666 (6th Cir. 2007). Allegations that the government delayed the trial to hamper the defense is a factor that "weigh[s] heavily against the government," while a "more neutral reason such as negligence or overcrowded courts" warrants less weight. *Barker*, 407 U.S. at 531. The government has advanced no justification for the delay in this case. Bugg points out, and the government concedes, that the government's entire body of evidence against Bugg had been available since the early stages of the investigation. The government's failure to explain the delay "tempts us to conclude that the delay lacks a valid justification. Such an unjustified delay, while not rising to the level of bad faith, would nevertheless suggest a 'more neutral' reason, such as negligence, for which the Government bore ultimate responsibility." *United States v. Watford*, 468 F.3d 891, 904-5 (6th Cir. 2006). But Bugg does not allege any prosecutorial advantage gained by the government from the post-indictment delay,[1] and thus we will not assume that the government delayed the trial to hobble the defense.

### b. Bugg's Assertion of His Right to a Speedy Trial

Bugg's timing in asserting his speedy-trial right weighs against him. *See Barker*, 407 U.S. at 531-32. Although a defendant does not waive his speedy-trial right by failing to raise it prior to trial, the "failure to assert the right will make it difficult for a defendant to prove that he was denied

---

[1]The considerable sentencing advantage that the government allegedly gained by declining to indict Bugg concurrently for the Western Auto and Gas-N-Go robberies stems only from *pre*-indictment delay. Bugg waived his right to raise this argument.

a speedy trial." *Young*, 657 F.3d at 415 (quoting *Barker*, 407 U.S. at 532). Bugg raised his speedy-trial right for the first time in his pre-sentencing motions and again during his sentencing allocution. While not as damaging as having waited until appeal, Bugg's delay in asserting this right hampers his vindication of it.

### c. Prejudice to Bugg

Finally, Bugg has not shown any prejudice stemming from the delay in bringing him to trial. Prejudice in this context is "assessed in light of the interests of defendants that the speedy trial right was designed to protect . . . : (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired." *Brown*, 498 F.3d at 532 (quoting *Barker*, 407 U.S. at 532) (alteration omitted). Because Bugg was already serving a lengthy prison term at the time of his original indictment, he cannot be said to have suffered "oppressive pretrial incarceration" or even excessive "anxiety and concern." *See Brown*, 498 F.3d at 532. There is no evidence that pre-trial delay actually impaired Bugg's defense; even if it had, Bugg exacerbated any impairment by requesting two continuances that further delayed his trial by six months. Thus, this factor weighs against Bugg.

Although the first two *Barker* factors slightly favor Bugg, Bugg's failure to assert his speedy-trial right in a timely fashion and his inability to show prejudice demonstrate that Bugg's Sixth Amendment right to a speedy trial was not violated.

### 2. Denial of Due Process Stemming From Prosecutor's Opening Statements

Bugg argues that the prosecutor violated his due process right to a fair trial by including an extensive description of evidence during his opening statements that the district court subsequently

excluded as unfairly prejudicial to Bugg. Because Bugg failed to object at trial, we review this claim for plain error. *United States v. Campbell*, 317 F.3d 597, 606 (6th Cir. 2003). Plain error requires Bugg to show that "(1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected [his] substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (internal quotation marks and citations omitted).

We find no such error here. Due to the unpredictability of trials, "not every variance between the advance description and the actual presentation constitutes reversible error, when a proper limiting instruction has been given," and when the prosecutor has acted in good faith. *Campbell*, 317 F.3d at 607 (quoting *Frazier v. Cupp*, 394 U.S. 731, 736 (1969)). The prosecution's conduct easily satisfies this standard. First, the prosecutor filed notice with the court of his intent to introduce this evidence, giving Bugg the opportunity to object in advance. Second, the prosecutor sought to introduce the evidence at trial, showing his good-faith belief that his opening statements described forthcoming, admissible evidence. Third, the district court gave an adequate limiting instruction that lawyers' statements are not evidence. Bugg's argument that the prosecutor should have sought a hearing on the proposed Rule 404(b) evidence before introducing it fails because it is the defendant's responsibility to object to the introduction of such evidence and request such a hearing. *Id.* Therefore, the prosecutor's statements did not violate Bugg's due process right to a fair trial.

### 3. Illustrative Evidence

Bugg protests the prosecution's use of a gun, not entered into evidence, which the prosecutor marked as an exhibit and displayed to witnesses, asking them to compare the exemplar gun to their

recollection of the gun used in the robbery. Bugg argues that, because the exemplar gun was not the actual gun used in the robbery, it lacked probative value. Moreover, he claims that its potential for unfair prejudice substantially outweighed any probative value that it might have had, so that its admission violated Federal Rule of Evidence 403.

We review the district court's decision to admit evidence "in the light most favorable to the government by maximizing the probative value of the evidence and minimizing its potential prejudice." *United States v. Gibbs*, 506 F.3d 479, 485 (6th Cir. 2007) (quoting *United States v. Sanders*, 95 F.3d 449, 453 (6th Cir. 1996)). Because Bugg did not object to the use of the gun at trial, we review for plain error. *United States v. Deitz*, 577 F.3d 672, 688 (6th Cir. 2009).

We have previously approved the use of models or replicas under Rule 403 to illustrate events for the jury where the prosecutor clarifies that the object was not used in the offense and the court gives an appropriate limiting instruction. *See, e.g.*, *United States v. Humphrey*, 279 F.3d 372, 376-77 (6th Cir. 2002) (approving the admission of replicas of coin bags allegedly involved in the disputed events to help the jury visualize 107 bags of coins in order to establish that a vault could not contain that many bags); *United States v. Buchanan*, 213 F.3d 302, 312 (6th Cir. 2000), *co-defendant's mandate recalled by United States v. Murray*, 2 F. App'x 398 (6th Cir. 2001) (approving the use of packages of cocaine to aid an expert witness in explaining how drug dealers package and distribute narcotics); *In re Air Crash Disaster*, 86 F.3d 498, 539 (6th Cir. 1996) (approving the admission of a computer-animated depiction of the operation of the circuit breaker involved in the airplane crash "to demonstrate the circuit breaker's inner workings").

Here, the prosecutor stated that the gun was for "identification," but otherwise did not make clear to the jury that the gun presented to the witnesses was not the actual gun used in the offense. Nor did the judge issue a limiting instruction, though none was requested. However, we need not determine whether the district court committed error in permitting the United States to use the gun as a demonstrative aid because the error, if any, was not plain.

### 4. *Sufficiency of the Evidence Proving Identity*

Bugg argues that insufficient evidence supports his conviction for the Western Auto robbery because the two eyewitnesses could not identify him and only a single fingerprint tied him to the scene. We review the evidence "in the light most favorable to the prosecution . . . ." *United States v. Childs*, 539 F.3d 552, 558 (6th Cir. 2008). Because Bugg did not move for a judgment of acquittal or for a new trial at any point, "his conviction on that charge must be affirmed absent a manifest miscarriage of justice," that is, "only when the record is devoid of evidence pointing to guilt." *United States v. Villarce*, 323 F.3d 435, 438 (6th Cir. 2003) (citations and internal quotation marks omitted). The fingerprint that Bugg concedes links him to the scene of the crime is evidence pointing to guilt. Accordingly, there is no manifest miscarriage of justice with respect to the sufficiency of the evidence supporting his conviction.

### 5. *Sufficiency of the Evidence Proving that the Western Auto Robbery Affected Commerce*

Section 1951(a) of Title 18 prohibits robbery, among other crimes, where the perpetrator "in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce." To establish this nexus, the government must make "only a showing of a *de minimis* connection with interstate commerce . . . ." *United States v. Davis*, 473 F.3d 680, 682

- 10 -

(6th Cir. 2007). Because Bugg never moved for a judgment of acquittal, we review for a manifest miscarriage of justice. *See Villarce*, 323 F.3d at 438. Contrary to Bugg's arguments, the government presented some evidence that Western Auto purchased out-of-state goods, and that the perpetrator stole money from the store. Therefore, the evidence meets the threshold for establishing a *de minimis* nexus with interstate commerce under a manifest-injustice standard.

## B. Challenges to the Sentencing Phase

Although Bugg raises a plethora of issues challenging his sentence, we need address only one: the district court's decision to impose nearly the entire sentence to run consecutively to Bugg's sentence for the Gas-N-Go robbery.

We review sentences imposed by the district court for an abuse of discretion, evaluating them for both substantive and procedural reasonableness. *United States v. Massey*, 663 F.3d 852, 856 (6th Cir. 2011) (citing *Gall v. United States*, 552 U.S. 38, 51 (2007)). A sentence is considered substantively or procedurally unreasonable if the district court fails to calculate the Guidelines range properly, treats the Guidelines as mandatory, fails to consider the § 3553(a) factors, selects a sentence based on clearly erroneous facts, or fails to explain the chosen sentence adequately. *Id.* Specifically, "[w]hen a defendant raises a particular, nonfrivolous argument in seeking a lower sentence, the record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Wallace*, 597 F.3d 794, 803 (6th Cir. 2010) (citation and internal alterations omitted).

Bugg argues that the district court abused its discretion by imposing the majority of Bugg's sentence for the Western Auto robbery to run consecutively to, instead of concurrently with, his sentence for the Gas-N-Go robbery. Although the district court was obligated to impose the twenty-five-year mandatory-minimum sentence for his firearm conviction consecutively to other sentences, it retained the discretion to impose the remainder of the sentence to run concurrently. *See* 18 U.S.C. § 924(c); U.S.S.G. § 5G1.3(c); *United States v. Gonzales*, 520 U.S. 1, 11 (1997). Bugg argued to the district court that the disparity between his total effective sentence (824 months) and sentences given to similarly situated defendants who are charged in one indictment (594-646 months) was unwarranted and fundamentally unfair and requested that the court use its discretion to correct the disparity by running the sentences concurrently to the greatest extent possible. Although the district court recognized that it had discretion to impose a concurrent sentence, the record does not reflect that the court considered Bugg's non-frivolous argument for a concurrent sentence and, if considered, its reasons for rejecting it. We therefore find the imposed sentence procedurally unreasonable. Because we reach this holding, we need not address Bugg's remaining challenges to his sentence.

## V. CONCLUSION

Although Bugg may have collateral claims based upon the alleged ineffectiveness of his trial counsel, we AFFIRM his conviction on this direct appeal, but VACATE his sentence, and REMAND for resentencing.