The **PEOPLE** of the State of Colorado,
Plaintiff–Appellee,

v.

Henrietta **VILLARREAL**,
Defendant–Appellant.

No. 03CA2396.

Colorado Court of Appeals,
Div. V.

Sept. 8, 2005.

Certiorari Denied April 17, 2006.*

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2004.

\* Justice EID does not participate.

Justice MARTINEZ and Justice BENDER would grant as to the following issue:

Whether the jury instruction on attempted first degree murder which omitted any reference to mens rea and incorrectly characterized the *actus reus* of the offense constitutes plain error where, as recognized by the court of appeals, the instruction permitted the Petitioner to be convicted on the mere showing of an "attempt to attempt" the offense.

Justice BENDER would grant as to the following issue:

Whether the court of appeals erred in concluding that the absence of heat of passion provocation is not a sentence enhance, subject to the requirements of *Apprendi.*

John W. Suthers, Attorney General, Deborah Isenberg Pratt, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Andrea R. Manning, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

DAILEY, J.

Defendant, Henrietta Villarreal, appeals the judgments of conviction and sentences entered upon jury verdicts finding her guilty of attempted first degree murder, first degree assault, and first degree burglary, all of

which involved the use of a deadly weapon. We affirm.

## I. Facts

The victim was settling in to watch a movie when she heard a knock on her apartment door and a sound like someone fumbling with the doorknob. Upon opening the door, she was attacked by an intruder who grabbed her hair, punched her, and bit off a chunk of her ear; the intruder then drew a knife and repeatedly stabbed her in the back of the neck, the lower back, the chest, and the face, as well as her extremities. According to the victim, the intruder expressed an intent to remain on the premises until the victim died, but had a change of mind and left upon discovering that the victim was expecting the imminent arrival of a friend.

The telephone line had been cut, and the door to the apartment shut when the intruder left. The victim nonetheless managed to open the door and fall outside, where neighbors found and assisted her. Her injuries were such that, if left untreated, she could have died; as it was, she was permanently disfigured.

The victim told a law enforcement officer dispatched to the scene that her assailant was a woman. At trial, the victim identified defendant as the assailant. The victim had seen defendant before on several occasions with the victim's former boyfriend (Karl). Karl had told the victim that defendant was his cousin. Defendant was not, however, Karl's cousin: she had lived and been romantically involved with Karl for over ten years.

At trial, the victim testified that, during the assault, defendant had called her a slut and a whore, and said things like, "I'm not gonna let you take my man away from me," "We've been together for 12 years," "[Y]ou won't be seeing Karl again . . . [i]f I can help it," and (repeatedly) "I'm gonna kill you."

The police found a duplicate key on the floor of the victim's apartment. The victim had given Karl a key, which he had placed on his keyring; within a couple of weeks, however, it had disappeared, and he told the victim that defendant may have taken it.

When questioned by the police, defendant admitted knowing of Karl's affair with the victim, but indicated her belief that the affair had ended nearly four months earlier. She informed the police that she had drunk a six-pack of beer and could not remember the events of that evening. After considerable prompting by the police, however, she seemed to recall going to the victim's apartment, arguing with her, punching her, picking up a knife, and cutting the phone line.

Defendant did not testify at trial. Her defense, however, was that she was not the person who attacked the victim. No physical evidence linked her to the crime. Defendant argued that she had no motive because Karl had already "blown off" the intimate relationship with the victim four months before the attack. Karl provided testimony supportive of an alibi defense. Defendant argued that the police had cajoled her into incriminating herself, despite her problems recalling the evening of the incident.

Defendant pointed out that, on one police report, the police recorded a neighbor's description of seeing what appeared to be a male running from the scene. Defendant posited that it may have been Karl himself who attacked the victim and forced her to blame defendant. Defendant argued that Karl was motivated to deprive her (defendant) of a share of insurance proceeds from a house fire. Defendant also asserted that the victim went along with this plan out of love for Karl and a desire to have him all to herself.

The victim testified that she now regarded Karl as a "nobody." And evidence was presented that (1) even after the affair was supposedly over, the victim kept contacting Karl "on and off" at work; (2) as of the date of the attack, Karl still had items of clothing in the victim's apartment; (3) the police felt it was unnecessary to pursue other physical evidence in light of defendant's admissions; and (4) the neighbor had reported seeing either a male, or a large female, leaving the scene.

The jury found defendant guilty, and the trial court sentenced her to concurrent terms of twenty-eight years imprisonment for each of the three crimes.

## II. Voluntariness of Statements

Defendant contends that the trial court erred in not suppressing the videotaped and written statements that she gave to the police. We disagree.

On appeal, defendant asserts that (1) she could not have knowingly, voluntarily, and intelligently waived her *Miranda* rights because she was not told, at the time of the interview, that the police had already secured a warrant for her arrest; and (2) her statements were involuntary because they were the product of deception, implied promises of leniency, psychological pressure, and aggressive questioning by the police.

In the trial court, however, defendant argued only that her statements should be suppressed because the police (1) deceived her by not telling her that they were executing a search warrant on her residence while they were interviewing her at the police station and (2) aggressively questioned her during the interview.

■ We consider only the issues raised in the trial court concerning the voluntariness of defendant's statements. *See People v. Salyer*, 80 P.3d 831, 835 (Colo.App.2003) (declining to consider new grounds for challenging the voluntariness of a statement).

■ To render a statement involuntary, coercive governmental conduct must play a significant role in inducing a confession or inculpatory statement. *People v. Owens*, 97 P.3d 227, 234 (Colo.App.2004). "In essence, the question at issue is whether the individual's will has been overborne." *People v. Valdez*, 969 P.2d 208, 211 (Colo.1998).

■ Whether an individual's will has been overborne depends upon the totality of the circumstances surrounding the statements. *See People v. Valdez, supra* (listing several relevant factors for consideration); *see also People v. Klausner*, 74 P.3d 421, 425 (Colo.App.2003).

■ In reviewing a trial court's ruling on a motion to suppress, we defer to those factual findings that are supported by competent evidence in the record, but review de novo the ultimate legal determination of whether a statement is voluntary. *See People v. Cardenas*, 25 P.3d 1258, 1264 (Colo.App.2000).

Here, the trial court, after reviewing the videotape twice, found:

> While I suppose I was as surprised as [defense counsel] in how [defendant] was not told about a search warrant, that doesn't change—whether she was or was not told about the search warrant doesn't change the fact that she appeared voluntarily, and then after the advisory, her willingness to speak.
>
> I do not find that her statements are a result of any duress or undue influence or coercion or any other untoward police conduct.

■ After reviewing the transcript of the suppression hearing and the videotape of the police interrogation, we agree with the trial court's conclusion.

The police requested that defendant go to the station for an interview. If she chose to do so, they also offered her a ride to the station, but told her that she did not have to ride with them. She agreed and rode without restraint to the station in the front seat of the police cruiser.

In our view, the record supports the trial court's conclusion that defendant willingly went to the station, and this conclusion is in no way undermined because the police did not tell her about the search warrant. *Cf. Moran v. Burbine*, 475 U.S. 412, 422, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 (1986)(assessing validity of waiver of *Miranda* rights: "No doubt the additional information would have been useful to [defendant]; perhaps even it might have affected his decision to confess. But we have never read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights.").

Nor do we consider defendant to have been in custody during the interrogation simply because the police did not reveal their intent to subsequently arrest her. *See People v. Matheny*, 46 P.3d 453, 468 (Colo.2002).

We agree with defendant that the police were, at times, aggressive and insistent in their questioning, particularly when she

claimed not to remember the events of the evening. But that fact alone would not render her statements involuntary. *See People v. Stephenson,* 56 P.3d 1112, 1120 (Colo.App.2001)(police badgering of suspect not considered coercive); *People v. Joyce,* 878 P.2d 48, 49–50 (Colo.App.1994)(statement not rendered involuntary because police officer indicated that he did not feel defendant was telling the truth).

Defendant was interviewed for a little over two hours in a small room by two detectives in plainclothes. One detective appeared to be armed, but not conspicuously so. Defendant was advised of her *Miranda* rights and indicated both her understanding of and willingness to waive such rights.

Neither detective made any threats or promises of leniency during the interrogation. The officers spoke, at all times, to defendant in a conversational tone of voice. They did not raise their voices or otherwise become confrontational with defendant. They worked to establish a sense of rapport, even trust, with her. Throughout, defendant remained calm and composed.

Viewing the circumstances in their totality, we conclude that the trial court correctly determined that defendant's will had not been overborne by the actions of the police and that, consequently, her statements were admissible at trial. *See People v. Valdez, supra,* 969 P.2d at 210–12 (fact that defendant was not intimidated by confrontational demeanor of police supports the finding that defendant's will was not overborne); *People v. Dracon,* 884 P.2d 712, 719 (Colo.1994)(officer's stern demeanor and serious tone did not intimidate defendant, inasmuch as, although nervous at times, she remained calm and composed); *People v. Lopez,* 946 P.2d 478, 481 (Colo.App.1997)(although coercive techniques were used in various parts of the interrogation, which lasted nearly thirty hours over the course of five days, the defendant's final statements were voluntary and did not result from coercive police tactics); *cf. People v. Matheny, supra,* 46 P.3d at 467 ("True, the purpose of the interview was to persuade Defendant to admit his involvement in the ... murders .... However, persuasion is not coercion ....").

Consequently, we conclude that the trial court did not err in refusing to suppress defendant's statements.

## III. Instructional Issues

Defendant also contends that reversal is required because the trial court failed to instruct the jury (1) properly on the mens rea and actus reus elements of the crime of attempted first degree murder; (2) on voluntary intoxication; (3) on the absence of "heat of passion" provocation, as an element of or sentencing enhancement factor for first degree assault; and (4) on the need to unanimously agree on an intended criminal objective of the burglary. We are not persuaded.

■ Defendant did not object to the trial court's instructions, nor tender any instructions on these matters for the court's consideration. Consequently, reversal is not warranted in the absence of a showing of plain error. *See* Crim. P. 30, 52(b).

■ Plain error is error that is "obvious," "substantial," and "grave." It is error that seriously affects the substantial rights of the accused and occurs when, after a review of the entire record, a court can conclude with fair assurance that the error so undermined the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. *Moore v. People,* 925 P.2d 264, 268–69 (Colo.1996).

Here, we perceive no plain error.

### A. Attempted First Degree Murder

■ The trial court instructed the jury that the crime of attempted first degree murder consisted of the following elements:

1. That the defendant
2. in the State of Colorado, at or about the date and place charged,
3. unlawfully and feloniously
4. attempted to,
5. engage in conduct constituting a substantial step toward the commission of Murder in the First Degree.

Defendant correctly posits that the trial court erred by (1) omitting the culpable mental state elements of "intentionally" and "af-

ter deliberation" from the instruction, *see Gann v. People*, 736 P.2d 37, 39 (Colo.1987); and (2) permitting defendant to be convicted upon a mere showing of "an attempt to attempt" the offense. *See People v. Frysig*, 628 P.2d 1004, 1009 (Colo.1981)(the actus reus element of attempt is engaging in conduct constituting a substantial step toward commission of a crime).

■ With respect to the first point, plain error does not occur if, as here, the applicable culpable mental states are otherwise set forth in a separate instruction delineating the elements of the crime the defendant is alleged to have attempted, here, first degree murder. *See Gann v. People, supra; People v. Petschow*, 119 P.3d 495, 2004 WL 2136945 (Colo.App. No. 01CA1684, Sept. 23, 2004); *People v. Beatty*, 80 P.3d 847, 851 (Colo.App. 2003); *People v. Johnson*, 74 P.3d 349, 354 (Colo.App.2002).

We acknowledge that, in each of the cited authorities, the attempt instruction omitted just one of the requisite culpable mental states (that is, after deliberation) of attempted first degree murder. However, if, in those cases, a separate instruction could supply one missing culpable mental state, we see no reason why it could not supply both culpable mental states.

Nor are we persuaded otherwise because the jury requested clarification, "in layman's terms," of the difference between "first and second degree attempted murder." As the trial court noted, apparently without any objection from defendant, the jury could discern the difference between the two offenses, using the instructions it already had; and the jury did not thereafter evidence any further confusion about the issue. *See Sanchez v. People*, 820 P.2d 1103, 1107 (Colo.1991)(court does not err in directing jury back to instructions when instructions already answer question).

■ With respect to defendant's second point, we not that, in another instruction, the trial court defined the term "attempt," in pertinent part, as "engag[ing] in conduct constituting a substantial step toward the commission of the offense." In light of this definition, a reasonable jury would have rec-

ognized the inherent redundancy created by element number four in the attempt instruction.

■ In any event, "an erroneous jury instruction does not normally constitute plain error where the issue is not contested at trial or where the record contains overwhelming evidence of the defendant's guilt." *People v. Miller*, 113 P.3d 743, 750 (Colo.2005).

Here, defendant did not contest the attack, the extent of the attack, and the injuries inflicted in the attack, on the victim; she contested only her identity as the perpetrator of the attack. Inasmuch as no issue was raised as to whether the conduct of the assailant was sufficient to satisfy the actus reus element of attempted first degree murder, and the evidence was otherwise overwhelming, we conclude that plain error did not occur as a result of the redundancy contained in the attempt instruction.

### B. Intoxication

■ Defendant also asserts that, because there was evidence that she had been drinking the day of the attack, the trial court was obligated sua sponte to instruct the jury on the applicable voluntary intoxication defense. We disagree.

■ Here, as noted above, defendant's defense was that she was not the person who attacked the victim. Providing the jury with an intoxication instruction would have been inconsistent with, and potentially undermining of, her theory of defense. A trial court does not commit plain error in failing to instruct a jury in a manner inconsistent with a defendant's theory of defense. *See People v. Close*, 867 P.2d 82, 91 (Colo.App. 1993)("[T]he failure to tender an instruction on intoxication [was] a tactical decision, with the defendant choosing to persuade the jury that he did not commit robbery or attempted murder at all, rather than that he committed the crimes but was too intoxicated to know what he was doing."), *overruled on other grounds by Bogdanov v. People*, 941 P.2d 247 (Colo.1997); *cf. People v. Aalbu*, 696 P.2d 796, 811 (Colo.1985)(quoting *People v. Romero*, 694 P.2d 1256, 1269 (Colo.1985): "It may reasonably be assumed that, in the absence

of any request for an instruction on a lesser included offense, the defendant 'elected to take his chance on an outright acquittal or conviction of the principal charge rather than to provide the jury with an opportunity to convict him of a lesser offense.' ").

### C. Heat of Passion Provocation

We also reject defendant's assertions that the trial court plainly erred in not (1) instructing the jury that acting in the absence of "heat of passion" provocation is an element or sentencing enhancer of class three felony first degree assault or (2) otherwise instructing the jury on heat of passion provocation principles.

### 1.

■ As pertinent here, a person commits first degree assault if, "[w]ith intent to cause serious bodily injury to another person, he causes serious bodily injury to any person by means of a deadly weapon." Section 18–3–202(1)(a), C.R.S.2004. This offense is punishable as a class three felony, unless

the act causing the injury is performed upon a sudden heat of passion, caused by a serious and highly provoking act of the intended victim, affecting the person causing the injury sufficiently to excite an irresistible passion in a reasonable person, and without an interval between the provocation and the injury sufficient for the voice of reason and humanity to be heard,

in which case the offense is punishable as a class five felony. Section 18–3–202(2)(a)–(b), C.R.S.2004.

The language of the first degree "heat of passion" provocation provision tracks that found in the second degree assault statute, see § 18–3–203(2)(a), C.R.S.2004, and closely parallels a similar provision found in the second degree murder statute, see § 18–3–103(3)(b), C.R.S.2004.

Our case law recognizes "heat of passion provocation" as a circumstance that mitigates otherwise applicable penalties for the crimes of second degree murder, first degree assault, and second degree assault. See People v. Garcia, 28 P.3d 340, 345–46 (Colo.2001)(second degree murder); Rowe v.

People, 856 P.2d 486, 490 (Colo.1993)(first degree assault); People v. Howard, 89 P.3d 441, 444–46 (Colo.App.2003)(second degree assault).

In People v. Howard, supra, and People v. Darbe, 62 P.3d 1006, 1015 (Colo.App.2002), other divisions of this court concluded that the absence of "heat of passion" provocation is neither an element nor a sentencing enhancer of either second degree assault or second degree murder, respectively. We reach the same conclusion here with respect to first degree assault.

■ It is within the legislature's prerogative to establish essential elements of criminal conduct and to formulate principles of justification, excuse, or mitigation for such conduct, "so long as the basic rights of the criminally accused are not thereby impaired." See Hendershott v. People, 653 P.2d 385, 391 (Colo.1982)(elements of and justification and excuse for criminal conduct); see also Rowe v. People, supra (mitigation of criminal conduct).

In Mullaney v. Wilbur, 421 U.S. 684, 698–99, 95 S.Ct. 1881, 1889, 44 L.Ed.2d 508 (1975), the Supreme Court indicated that a state should not be able to evade the due process requirement that the prosecution prove beyond a reasonable doubt all essential elements of a crime simply by recharacterizing such elements as factors that bear solely on the extent of punishment. Under the law considered in Mullaney, (1) there were two grades of felonious homicide, murder and manslaughter; (2) murder was committed "with malice aforethought," while manslaughter was committed in the absence of malice aforethought, upon heat of passion provocation; and (3) malice aforethought was conclusively presumed upon a showing of an intentional homicide, unless the defendant could show, by a preponderance of the evidence, that the homicide was committed under a provoked heat of passion. Mullaney v. Wilbur, supra, 421 U.S. at 691–92, 95 S.Ct. at 1886.

The effect of this scheme, the Court held, was to improperly shift to a defendant the prosecution's burden of proof with respect to the essential element of "malice afore-

thought." Consequently, even though absence of heat of passion provocation was not formally listed as an element in the murder statute, the Court required that the prosecution prove it beyond a reasonable doubt "when the issue [was] properly presented in a homicide case." *Mullaney v. Wilbur, supra,* 421 U.S. at 704, 95 S.Ct. at 1892.

Two years later, in *Patterson v. New York,* 432 U.S. 197, 215, 97 S.Ct. 2319, 2329, 53 L.Ed.2d 281 (1977), the Court limited *Mullaney*'s holding to only "that a State must prove every ingredient of an offense beyond a reasonable doubt, and that [the State] may not shift the burden of proof to the defendant by presuming that ingredient upon proof of the other elements of the offense." Otherwise, the Court recognized that a state need not "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment." *Patterson v. New York, supra,* 432 U.S. at 207, 215, 97 S.Ct. at 2325, 2329; *see also Walker v. People,* 932 P.2d 303, 309–10 (Colo.1997) (discussing *Mullaney* and *Patterson* ); *People v. Seigler,* 832 P.2d 980, 983–84 (Colo.App.1991)(same).

The critical inquiry is whether the circumstance is one which "in actuality negate[s]" an element of the crime, or is "distinct from" an element of the crime. *See* Wayne R. LaFave, *Substantive Criminal Law* § 1.8(c), at 86–87 (2d ed.2003).

Here, unlike the law under consideration in *Mullaney,* Colorado's first degree assault statute does not presume any element of the crime; and the mitigating circumstance which the General Assembly has allowed, namely, acting upon a provoked heat of passion, is distinct from and would not negate any element of first degree assault. *See People v. Suazo,* 867 P.2d 161, 166 (Colo.App. 1993)("Heat of passion [provocation], as it pertains to the crime of assault, is neither a culpable mental state nor part of a culpable mental state."). Consequently, the prosecution need not prove, and the jury need not be instructed upon, the absence of heat of passion provocation as an element of the crime. *Cf. Walker v. People, supra* (discussing issue in context of second degree murder and former offense of heat of passion manslaughter); *People v. Seigler, supra* (same).

■ Nor is the absence of heat of passion provocation a sentencing enhancer within the meaning of, and subject to, the requirements of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi,* the Supreme Court specifically noted and reaffirmed the distinction between "facts in aggravation of punishment and facts in mitigation." *Apprendi, supra,* 530 U.S. at 490 n. 16, 120 S.Ct. at 2363. And as the United States Court of Appeals for the Second Circuit noted:

> Defendant's interpretation of *Apprendi* ... would largely prohibit Congress from establishing facts in mitigation of punishment, because any attempt to do so would necessarily result in having to submit to the jury the question of the *negating* of these mitigating facts in order to support a punishment greater than that prescribed in the mitigating provision.... This would effectively rewrite an otherwise valid criminal statute—something neither done nor authorized in *Apprendi.* We do not believe *Apprendi* in any way calls into question the power of Congress to establish mitigating exceptions to otherwise complete offenses.

*United States v. Outen,* 286 F.3d 622, 638 (2d Cir.2002); *see United States v. Fazal–Ur–Raheman–Fazal,* 355 F.3d 40, 52–53 (1st Cir. 2004); *United States v. Campbell,* 317 F.3d 597, 603 (6th Cir.2003); *see also People v. Howard, supra.*

Thus, we conclude that the prosecution need not prove, and the jury need not be instructed about, the absence of heat of passion provocation as a sentence enhancer under *Apprendi.*

#### 2.

■ Under Colorado law, once the issue of heat of passion provocation is injected into a case, the prosecution must prove the absence of heat of passion provocation beyond a reasonable doubt and the jury must be instructed accordingly. *See People v. Garcia, supra,* 28 P.3d at 346 (discussing heat of

passion mitigator, in relation to crime of second degree murder); *cf. People v. Hill,* 934 P.2d 821, 830 (Colo.1997)(discussing affirmative defense of insanity).

▬ Here, we find no plain error in the trial court's failure to sua sponte submit a heat of passion provocation issue to the jury. In the first place, the submission of the issue to the jury would have been inconsistent with defendant's position at trial, namely, that she was not the attacker and would have had no motive to attack the victim, inasmuch as Karl's affair with the victim had ended months earlier. *Cf. People v. Close, supra* (trial court's failure to instruct jury on intoxication not error because of defendant's tactical decision).

Further, in any event, there was insufficient evidence to support a heat of passion provocation instruction and interrogatory in this case. As pertinent here, a heat of passion provocation instruction was warranted only if some evidence (regardless of how incredible, unreasonable, improbable, or slight it may be) tended to establish that (1) the assault was performed upon a sudden heat of passion (2) caused by a serious and highly provoking act of the intended victim, (3) which was sufficient to excite an irresistible passion in a reasonable person, and (4) between the provocation and the assault, an insufficient interval of time passed for the voice of reason and humanity to be heard. *See Cassels v. People,* 92 P.3d 951, 956 (Colo.2004)(second degree murder).

All four elements must find support in the evidence before a defendant is entitled to submit the provocation issue to a jury. *See People v. Ramirez,* 56 P.3d 89, 93–96 (Colo.2002)(second degree murder); *People v. Dooley,* 944 P.2d 590, 593–94 (Colo.App.1997)(discussing former offense of "heat of passion manslaughter").

Here, considering the evidence in the light most favorable to defendant, *see Cassels v. People, supra,* 92 P.3d at 957, defendant acted with lethal force not in response to any evidence of recent sexual activity between the victim and Karl, but to only a lingering (and, ultimately, unfounded) suspicion that the victim might still be intimately involved with Karl. As such, there was no evidence of the victim performing any highly provoking act around the time of the assault, much less one that would irresistibly excite the passion of an objectively reasonable person to seriously injure another. *See People v. Sepulveda,* 65 P.3d 1002, 1007 (Colo.2003)("cumulative provocation is an insufficient basis for a heat of passion instruction"); *cf. People v. Ramirez, supra,* 56 P.3d at 95 ("a victim's rejection of the defendant's affections is not sufficient to constitute a highly provoking act that would excite an irresistible urge in a reasonable person"); *Coston v. People,* 633 P.2d 470, 472–74 (Colo.1981)(rejecting need for heat of passion instruction based on evidence of (1) defendant's long-standing, sexual relationship with victim, (2) his jealousy when she began another affair, and (3) her attempt to terminate their relationship).

Because no evidence was presented of an event sufficient to provoke in a reasonable person a passion to cause serious bodily injury, we conclude that the trial court did not plainly err in not submitting the heat of passion provocation issue to the jury.

### D. Unanimity

▬ Defendant also asserts that her conviction of first degree burglary must be reversed because the jury was not required to unanimously agree on the offense she intended to commit upon entering the victim's residence. We are not persuaded.

▬ Defendant is correct that, in a burglary case, the jury must agree on the underlying felony the defendant intended to commit, *People v. Palmer,* 87 P.3d 137, 140 (Colo. App.2003), and that, in this case, the jury was not instructed that it would have to unanimously agree as to which felony or felonies defendant intended to commit.

▬ However, "the failure to give … a [particular] unanimity instruction may be harmless beyond a reasonable doubt if the reviewing court is convinced the jury verdicts reflect unanimous agreement." *People v. Hall,* 60 P.3d 728, 733 (Colo.App.2002).

Here, because the jury unanimously found defendant guilty of two of the possible felonies underlying the burglary, namely at-

tempted first degree murder and first degree assault, we conclude that any lack of a special unanimity instruction was harmless and not plain error. *Cf. People v. Lawrence,* 55 P.3d 155, 164–65 (Colo.App.2001)(rejecting finding of plain error where it was "unlikely that jurors could disagree or be confused as to which acts ... defendant committed or assisted in"), *abrogated on other grounds by Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

### IV. Sentencing

█ Last, defendant contends that the trial court erred in imposing a lengthy sentence based in part upon her assertion of innocence. We disagree.

Defendant was subject to a sentence of between sixteen and forty-eight years imprisonment for her attempted first degree murder (crime of violence) conviction. *See* §§ 18–1.3–401(1)(a)(V) & (8)(a)(I), 18–1.3–406(2)(a)(I)(B), C.R.S.2004. In sentencing her to a twenty-eight-year term of imprisonment, the trial court considered, among other things, that, "contrary to all the evidence this Court heard, [she] never has taken responsibility for her conduct."

On appeal, defendant asserts that, in considering her failure to accept responsibility, the trial court improperly penalized her for exercising her Fifth Amendment right against self-incrimination, in contravention of *People v. Young,* 987 P.2d 889, 894–95 (Colo. App.1999). In *Young,* a division of this court held that, "if a defendant maintains his innocence and invokes his right against self-incrimination both at trial and at sentencing, a trial court cannot constitutionally consider his lack of an expression of remorse as an aggravating circumstance." *People v. Young, supra,* 987 P.2d at 894.

In *Young,* the defendant did not testify at trial or make a statement at or for sentencing; he maintained his innocence by remaining silent throughout the proceedings.

In this case, defendant did not choose to remain silent throughout the proceedings. Although she did not testify at trial, she addressed the court at sentencing. She stated:

[M]y kids have been suffering from all this because I let one man into my life 11 years ago, which I should never have done. He victimized not only me but [the victim], too.

And I still deny that I did any of this, but, unfortunately, I was found guilty. He's—he's the person who loves one person, and that's himself. If he can get away with hurting anybody, he will, and normally does.

Defendant having chosen to address the trial court on the merits of her conviction, we perceive no reason why the court could not consider what she said as well what she did not say at that time. *See People v. Lopez,* 129 P.3d 1061, 2005 WL 1773911 (Colo.App. No. 03CA0049, July 28, 2005)(defendant testified at trial and made statement for inclusion in presentence report; also distinguishing *People v. Young, supra* ); *see also People v. Gagnon,* 997 P.2d 1278, 1284 (Colo.App. 1999)(a defendant's failure to accept responsibility is relevant to his or her potential for rehabilitation).

Consequently, we find no sentencing error on the part of the trial court.

The judgments and sentences are affirmed.

Judge ROY and Judge ROMÁN concur.