23CA0163 Peo v Vialpando 07-17-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0163
Boulder County District Court No. 21CR956
Honorable Patrick Butler, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

James Delon Vialpando,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division VI
Opinion by JUDGE YUN
Sullivan, J., concurs
Tow, J., specially concurs

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 17, 2025

---

Philip J. Weiser, Attorney General, Grant R. Fevurly, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John P. Finnegan, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     James Delon Vialpando appeals the judgment of conviction entered on a jury verdict finding him guilty of first degree assault. He contends that the district court reversibly erred by (1) denying his motion to suppress statements he made to an arresting police officer; (2) allowing questions he asked about the victim's race after the assault to be admitted at trial; and (3) failing to sua sponte instruct the jury on the heat of passion mitigator to first degree assault. We affirm the conviction.

## I.     Background

¶ 2     In 2021, Michael Gustafson, the victim, was living in a camper parked in a parking lot outside of the building where he worked. One night, Gustafson was awakened by Vialpando, who was drunkenly yelling as he walked through the parking lot. After hearing Vialpando kick over a cigarette butt receptacle, Gustafson grabbed a metal bar and went to confront him.

¶ 3     A motion-activated security camera captured Gustafson approaching Vialpando with the bar raised while Vialpando backed away. Gustafson attacked Vialpando, but Vialpando managed to grab the bar and wrest it away from Gustafson before using it to strike Gustafson's head several times. The two men continued to

struggle over the bar on the ground, after which Vialpando stood up and picked up the weapon. The last thing the camera captured was Vialpando winding up to strike Gustafson, who was still on his knees.

¶ 4 According to Gustafson's friend, the only witness to the encounter, Vialpando struck Gustafson with the bar "at least 10 or 15" times after Gustafson had stopped moving. Vialpando later told the police, after being Mirandized, that he continued attacking Gustafson even after he was unconscious to "tell him that I'm the winner" and because he "just wanted to stomp on him."

¶ 5 The People charged Vialpando with attempted second degree murder and first degree assault. At trial, the prosecution conceded Vialpando acted in self-defense during the initial fight with Gustafson but argued that Vialpando's actions went beyond self-defense and became criminal when "[h]e kept beating [Gustafson] 10 to 15 times after he was down for the count." Vialpando's primary defense was that he did not strike Gustafson after he stopped moving and that Gustafson's friend was a biased witness whose testimony was not credible. He also presented a voluntary intoxication defense to the assault charge.

¶ 6    The jury acquitted Vialpando of attempted second degree murder but found him guilty of first degree assault.

## II.    *Miranda* Waiver

¶ 7    Vialpando first contends that the district court erred when it denied his motion to suppress statements made to an arresting officer because "he did not knowingly and intelligently waive his *Miranda* rights due to his intoxication."  We disagree.

## A.    Additional Background

¶ 8    Police located and detained Vialpando a short time after his altercation with Gustafson.  An officer read his *Miranda* rights and asked if he understood them, after which the following colloquy occurred[1]:

> The officer:  Do you understand each of these rights that I've read you?  Do you understand? Yes?
>
> Vialpando:  I think so.
>
> The officer:  Do you have a question, or?
>
> Vialpando:  I just don't understand.
>
> The officer:  What don't you understand?

---

[1] Their conversation was not transcribed; this is our understanding of what was said from viewing the body camera footage.

Vialpando:  Information, man.  Man, that motherfucker — alright, yeah.

The officer:  Do you understand the rights that I read to you?

Vialpando:  Man, I understand that (unintelligible) — alright, I understand.

The officer:  Do you understand the rights —

Vialpando:  No.

The officer:  — that I just read?  Your rights that I just read, do you understand those?  I can't ask you anything unless you say you understand.

Vialpando:  Is it good to say yes?

The officer:  No, I'm only asking you if you understand them.  You don't have to talk, I'm just asking if you understand your rights.  Do you understand what I just read to you?

Vialpando:  I do.

The officer:  Any questions about that?

Vialpando:  No.  There's my glasses.

The officer:  Okay, so, with these rights in mind, do you wish to talk to us now?

Vialpando:  Yes.

Vialpando then spoke with the officer for about eight minutes before stating, "I need a fucking lawyer."  The officer stopped his questioning.

¶ 9    Vialpando moved to suppress his statements, contending that the *Miranda* waiver was invalid due to his intoxication. The district court denied the motion after a hearing, finding that, under the totality of the circumstances, "there was a valid, knowing, voluntary, and intelligent waiver of [Vialpando's] *Miranda* rights and [Vialpando's] intoxication did not prevent him from doing so."

### B.    Standard of Review and Applicable Law

¶ 10    In reviewing a ruling on a motion to suppress, we ordinarily defer to the district court's factual findings if they are supported by the record and review the court's application of law de novo. *People v. Vaughn*, 2014 CO 71, ¶ 9. But where, as here, the challenged interrogation is video-recorded and there are no relevant disputed facts outside of the recording, we are in a position similar to the district court to resolve the issues. *See People v. Taylor*, 2018 CO 35, ¶ 7. Therefore, we may conduct an independent review of the interrogation video to determine whether Vialpando's statements should have been suppressed under controlling law. *See id.*

¶ 11    Before a custodial interrogation, officers must give a defendant a *Miranda* advisement to inform him of his constitutional rights to

5

remain silent and request an attorney. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). Whether a waiver is valid involves two distinct inquiries — namely, "(1) whether the waiver was voluntary, that is, whether it was the product of a free and deliberate choice rather than intimidation, coercion, or deception; and (2) whether the waiver was made knowingly and intelligently." *People v. Gonzalez-Zamora*, 251 P.3d 1070, 1074 (Colo. 2011).

¶ 12    It is the second inquiry that is pertinent in this case. This "inquiry does not concern the wisdom of a defendant's decision to waive their *Miranda* rights, rather it concerns whether the defendant sufficiently comprehended the waiver itself." *People v. Humphrey*, 132 P.3d 352, 356 (Colo. 2006); *see People v. Kaiser*, 32 P.3d 480, 484 (Colo. 2001) ("[S]imply because the defendant's decision to talk to the police might be ill-advised does not mean that the defendant's decision was not knowing and intelligent.").

¶ 13    In determining whether a *Miranda* waiver is knowing and intelligent, courts consider the following factors:

> (1) the length of time between the initial *Miranda* advisement and the interrogation; (2) whether the defendant or the interrogating officer initiated the interview; (3) whether and to what extent the interrogating officer

reminded the defendant of his or her rights before the interrogation; (4) the clarity and form of the defendant's acknowledgment and waiver; (5) the defendant's background and experience with the criminal justice system; and (6) any language barriers and the defendant's age, experience, education, background, and intelligence.

*People v. Knedler*, 2014 CO 28, ¶ 13.

¶ 14    Self-induced intoxication is an additional factor that may (but does not necessarily) result in an unknowing and unintelligent waiver. To evaluate whether self-intoxication results in an unknowing and unintelligent waiver, courts consider the following additional factors:

> (1) whether the defendant was oriented to his or her surroundings and situation; (2) whether the defendant's answers were the responsive product of a rational thought process; (3) whether the defendant was able to appreciate the seriousness of his or her situation and the possibility of incarceration; (4) whether the defendant had the foresight to attempt to deceive the police to avoid prosecution; (5) whether the defendant expressed remorse for his or her actions; and (6) whether the defendant expressly stated that he or she understood his or her rights.

*Id.* at ¶¶ 14-15.

## C. Discussion

¶ 15    We acknowledge that the body camera footage demonstrates that Vialpando was intoxicated during the interrogation and that some of the factors relevant to whether the waiver was knowing and intelligent favor Vialpando: (1) the officer initiated the interview with Vialpando; (2) when first asked if he understood his *Miranda* rights, Vialpando indicated that he did not; (3) the officer did not remind Vialpando of his rights during the brief interrogation; and (4) the prosecution did not present evidence of Vialpando's prior experience with the criminal justice system. *See id.* at ¶ 13.

¶ 16    But other facts cut in favor of finding that the waiver was knowing and intelligent: (1) Vialpando made the waiver at the beginning of the interview; (2) when the officer clarified that he was asking if Vialpando understood his *Miranda* rights and not about something else, Vialpando said that he did; and (3) there were no signs of a language barrier, and his age, experience, education, background, and intelligence[2] did not suggest any barrier to

---

[2] Vialpando argues that "his nonresponsive statements suggested a possibly reduced level of intelligence." However, there is nothing in the suppression hearing record to suggest that any incoherence was the result of something other than Vialpando's intoxication.

comprehension.  Most importantly, Vialpando eventually did exercise one of his *Miranda* rights by requesting a lawyer.

¶ 17    While the six factors discussed above present a mixed picture, all but one of the self-induced intoxication factors support the conclusion that Vialpando's waiver was knowing and intelligent. *See id.* at ¶ 14.

¶ 18    First, the recording of the interrogation demonstrates that Vialpando was oriented to his surroundings and situation.  When he was first stopped by the police, Vialpando asked the officer — unprompted — if Gustafson was dead, suggesting that he understood the reason for his detention.  Vialpando complied with the officers' commands, including rolling onto his stomach when asked and assisting an officer in spelling his last name.  Moreover, shortly before the *Miranda* waiver, Vialpando had the wherewithal to effectively defend himself from Gustafson's armed attack.  *See People v. Clayton*, 207 P.3d 831, 836 (Colo. 2009) (waiver was valid even though the defendant was intoxicated at the time, where he appeared to be aware of his surroundings and answered questions appropriately).

¶ 19    Second, Vialpando's answers to the officer's questions were, by and large, rationally related to the questions posed. While Vialpando occasionally meandered or lost focus, he ultimately responded to the officer's interrogation by expressing that he had defended himself from Gustafson's attack. *See id.*; *Kaiser*, 32 P.3d at 486 (waiver was knowing and intelligent where the defendant's answers were cogent and responsive).

¶ 20    Third, Vialpando demonstrated an understanding of the gravity of his situation and the potential for incarceration when he informed the officer that he needed a lawyer.

¶ 21    Fourth, Vialpando attempted to deceive the police by telling the officer that he did not strike Gustafson with a weapon and only kicked him once in the chest.

¶ 22    Finally, Vialpando expressly stated — eventually — that he understood his rights. *See People v. Al-Yousif*, 49 P.3d 1165, 1172 (Colo. 2002) (the court may rely, at least in part, on a defendant's own statements expressing understanding). And as previously mentioned, he ultimately exercised one of those rights by requesting a lawyer.

¶ 23    Only one of the voluntary intoxication factors does not favor

finding a knowing and intelligent waiver — Vialpando never

expressed any remorse for his actions.  But this factor does not

outweigh the other five, particularly given that Gustafson started

the fight by attacking Vialpando.

¶ 24    In sum, we agree with the district court that the totality of the

facts and circumstances demonstrates that Vialpando "was drunk,

but he was not so drunk that he could not make reasoned,

intelligent, and knowing decisions about his right to remain silent."

Accordingly, we conclude that Vialpando's *Miranda* waiver was

knowing and intelligent, and the district court did not err by

denying the motion to suppress.

III.    Admission of Questions About Gustafson's Race

¶ 25    Vialpando next contends that the district court reversibly

erred by admitting questions Vialpando asked a police officer about

Gustafson's race.  We are not persuaded.

A.    Additional Background

¶ 26    After the altercation with Gustafson, Vialpando was taken to

the hospital.  While there, he discussed the charges against him

with a police officer; during this discussion, he asked the officer if

11

Gustafson — who is white — is a "black person," a "motherfucker," or a "chomo." Later, the officer mentioned Gustafson again and Vialpando asked him, "What color?" and "What is his race? What is he?"

¶ 27   Vialpando unsuccessfully moved to exclude the portion of body-worn camera footage containing these questions before trial, arguing that "[t]he involvement of race is not probative and the danger of unfair prejudice to Mr. Vialpando would substantially outweigh any possible probative value." When he renewed his objection at trial, the district court found that "[t]he interactions . . . indicate the state of mind of [Vialpando] at various points after the incident" and allowed the prosecution to play the body-worn camera footage, including the portion containing the questions, for the jury. Vialpando did not request a limiting instruction.

B.   Standard of Review and Applicable Law

¶ 28   The district court has broad discretion in determining the admissibility of evidence based on its relevance, probative value, and prejudicial impact. *People v. Elmarr*, 2015 CO 53, ¶ 20. We review evidentiary rulings for an abuse of discretion. *People v. Quillen*, 2023 COA 22M, ¶ 14. The court abuses its discretion if its

12

decision is manifestly arbitrary, unreasonable, or unfair, or if it misapplies the law. *Id.*

¶ 29     We review nonconstitutional trial errors that were preserved by objection for harmless error. *Hagos v. People*, 2012 CO 63, ¶ 12. Under this standard, we reverse only if the error affects the substantial rights of the parties — that is, if the error "substantially influenced the verdict or affected the fairness of the trial proceedings." *Id.* (quoting *Tevlin v. People*, 715 P.2d 338, 342 (Colo. 1986)).

¶ 30     Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. But relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. CRE 403.

¶ 31     The balancing test under Rule 403 favors the admission of evidence. *People v. Cousins*, 181 P.3d 365, 370 (Colo. App. 2007). Thus, when reviewing a district court's exercise of discretion under Rule 403, an appellate court must afford the evidence the

maximum probative value attributable by a reasonable fact finder and the minimum unfair prejudice to be reasonably expected. *Id.*

¶ 32 "Unfair prejudice occurs under CRE 403 if otherwise admissible evidence has 'an undue tendency to suggest a decision [made] on an improper basis,' which is 'commonly but not necessarily an emotional one, such as sympathy, hatred, contempt, retribution, or horror.'" *Id.* (alteration in original) (quoting *People v. Dist. Ct.*, 785 P.2d 141, 147 (Colo. 1990)).

## C. Discussion

¶ 33 Vialpando argues that his questions about Gustafson's race were inadmissible because they were irrelevant and risked unfair prejudice against him by implying bad character. We disagree.

¶ 34 First, the footage including the questions was relevant. At trial, Vialpando presented a voluntary intoxication defense alongside his claim of self-defense. *See People v. Snelling*, 2022 COA 116M, ¶ 14 ("Voluntary intoxication may negate specific intent . . . ."); § 18-3-202(1)(a), C.R.S. 2024 (first degree assault requires an offender to act "[w]ith intent"); *Palmer v. People*, 964 P.2d 524, 526 (Colo. 1998) ("[A]ll offenses in the criminal code in which the mental culpability requirement is expressed as

'intentionally' or 'with intent' are specific intent offenses."). The video-recorded questions showed Vialpando's demeanor and recollection (or lack of recollection) of Gustafson's characteristics roughly an hour after their altercation and were therefore probative of his level of intoxication and ability to form the requisite intent to commit first degree assault during the fight. *Cf. Kaufman v. People*, 202 P.3d 542, 559 (Colo. 2009) (drawings made by the defendant approximately four days after a stabbing did not show his state of mind during the stabbing).

¶ 35    Second, while there was a risk of some prejudice from Vialpando's fixation on Gustafson's race, we cannot conclude that the probative value of the footage showing the questions was substantially outweighed by the danger of unfair prejudice. Vialpando asks us to assume that hearing the questions "encouraged the jury to act out of a desire to punish Vialpando for his presumed racial attitudes." But making such an inference would, under these circumstances, contravene our mandate to afford the questions "the minimum prejudicial impact a reasonable juror would give [them]." *Cousins*, 181 P.3d at 370. Although Vialpando's questions to the officer had racial undertones, they also

reflected his confusion about the identity of the person he assaulted.

¶ 36     In light of the body-worn camera footage's probative value toward Vialpando's state of mind and voluntary intoxication defense and the minimal prejudicial impact we must ascribe to the questions, we conclude that the district court did not abuse its discretion by admitting the footage.

¶ 37     But even if we were to assume that the district court erred by admitting the questions, the error was harmless.  The footage containing the questions was brief — under a minute and thirty seconds long — and the prosecution did not elicit any testimony about the questions and did not mention them during closing arguments.  *See People in Interest of D.F.A.E.*, 2020 COA 89M, ¶¶ 43-46; *see also People v. Jimenez*, 217 P.3d 841, 865 (Colo. App. 2008) ("Under the circumstances, these brief, isolated statements, even if erroneously admitted, did not affect defendant's substantial rights.").  And the evidence against Vialpando was strong: both eyewitness testimony and Vialpando's own statements to the police established that Vialpando continued to strike Gustafson after he was no longer a threat.  *See Pernell v. People*, 2018 CO 13, ¶ 25

16

("[T]he strength of the properly admitted evidence supporting the guilty verdict is clearly an 'important consideration' in the harmless error analysis." (quoting *Crider v. People*, 186 P.3d 39, 43 (Colo. 2008))).

¶ 38     Moreover, the jury returned a split verdict, acquitting Vialpando of attempted murder while convicting him of first degree assault.  "While a split verdict does not conclusively decide the harmlessness question, it is 'an indication that the jurors exercised some discretion in their deliberations' and that the error did not cause them to 'blindly convict the defendant.'"  *Washington v. People*, 2024 CO 26, ¶ 35 (quoting *Martin v. People*, 738 P.2d 789, 795–96 (Colo. 1987)).

¶ 39     Taking into account the brief, isolated nature of the challenged questions, the strength of the evidence against Vialpando, and the jury's split verdict, we cannot reasonably conclude that the admission of the body-worn camera footage containing the questions could have "substantially influenced the verdict or affected the fairness of the trial proceedings."  *Hagos*, ¶ 12 (quoting *Tevlin*, 715 P.2d at 342).

## IV. Heat of Passion Mitigator

¶ 40    Vialpando contends that the district court plainly erred by not instructing the jury, sua sponte, on the heat of passion mitigator to first degree assault.  We again disagree.

### A. Standard of Review and Applicable Law

¶ 41    Because Vialpando did not request a heat of passion instruction, we review this contention for plain error.  *See Hagos*, ¶ 14.  Plain error "occurs when there is (1) an error, (2) that is obvious, and (3) that so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction."  *Cardman v. People*, 2019 CO 73, ¶ 19.  To be plain, "an error must 'be so obvious' at the time it is made 'that a trial judge should be able to avoid it without the benefit of an objection.'"  *Id.* at ¶ 34 (citation omitted).  Thus, to be obvious, an error generally "must contravene (1) a clear statutory command; (2) a well-settled legal principle; or (3) Colorado case law."  *Id.* (citation omitted).

¶ 42    First degree assault is generally a class 3 felony but is a class 5 felony if committed in a sudden heat of passion due to provocation.  § 18-3-202(2).  Thus, the existence of such a heat of

passion does not represent a separate substantive offense; rather, it acts as a mitigating factor lessening a person's culpability and sentence for first degree assault. *Rowe v. People*, 856 P.2d 486, 490-91 (Colo. 1993).

¶ 43    A defendant who requests a heat of passion instruction is entitled to one if "some evidence (regardless of how incredible, unreasonable, improbable, or slight it may be) tend[s] to establish" the factors described in subsection (2)(a) of the first degree assault statute. *People v. Villarreal*, 131 P.3d 1119, 1128 (Colo. App. 2005). Some evidence must show that

> (1) the assault was performed upon a sudden heat of passion (2) caused by a serious and highly provoking act of the intended victim, (3) which was sufficient to excite an irresistible passion in a reasonable person, and (4) between the provocation and the assault, an insufficient interval of time passed for the voice of reason and humanity to be heard.

*Id.*; *see* § 18-3-202(2)(a).

## B.    Discussion

¶ 44    Vialpando argues that the district court should have instructed the jury on the heat of passion mitigator even though he did not request the court to do so. But a division of this court

concluded over two decades ago that "no error, and thus, no plain error[,] occur[s] when the trial court d[oes] not *sua sponte* instruct the jury" on the heat of passion mitigator because "[t]he jury need be instructed as to an affirmative defense or a sentence-mitigating factor only if some evidence presented at trial supports it *and the defendant requests it.*"[3]  *People v. Lee*, 30 P.3d 686, 689 (Colo. App. 2000) (second emphasis added).

¶ 45    Recognizing this roadblock, Vialpando asserts that *People v. Stewart,* 55 P.3d 107 (Colo. 2002), "implicitly abrogated *Lee*'s holding."  In *Stewart,* the supreme court recognized that where "it

---

[3] The special concurrence says that a sentence mitigator is more like a lesser included offense than an affirmative defense.  But a heat of passion mitigator — while not an affirmative defense, *Rowe v. People*, 856 P.2d 486, 491-92 (Colo. 1993) — does share similarities with affirmative defenses.  For example, "[a] heat of passion defense basically admits the doing of the act charged but seeks to mitigate it," *People v. Harris*, 797 P.2d 816, 818 (Colo. App. 1990); *cf. Roberts v. People*, 2017 CO 76, ¶ 20 ("An affirmative defense essentially admits the defendant's commission of the elements of the charged act but seeks to justify, excuse, or mitigate the commission of the act."), and "once the issue of heat of passion provocation is injected into a case, the prosecution must prove the absence of heat of passion provocation beyond a reasonable doubt," *People v. Villarreal,* 131 P.3d 1119, 1127 (Colo. App. 2005); *cf. Roberts,* ¶ 22 ("[W]hen the evidence presented properly raises the issue of an affirmative defense, . . . the trial court must instruct the jury that the prosecution bears the burden of proving beyond a reasonable doubt that the affirmative defense is inapplicable.").

appears that an error or omission in jury instructions is due to inadvertence or attorney incompetence," a court's failure to give an unrequested affirmative defense instruction could constitute plain error. *Id.* at 119. Vialpando contends that "*Lee*'s analysis renders *Stewart*'s command to review inadvertent omissions by counsel for plain error a nullity because, under *Lee*, any omission in jury instructions by defense counsel would not be error."

¶ 46 We acknowledge that, read broadly, the holding in *Lee* could conflict with *Stewart*. But a decision after *Lee* has applied the holding more narrowly.

¶ 47 In *People v. Wade*, 2024 COA 13, ¶ 11, a division of this court cited *Lee* for the principle that the jury needs to be instructed on self-defense only when the defendant requests it. But rather than resolving the issue solely on the defendant's failure to tender a self-defense instruction, the division concluded that the failure appeared to be a strategic choice and held that "[w]hen the defense makes a tactical decision not to submit an alternative defense instruction, a trial court's failure to sua sponte offer the instruction does not constitute error, much less plain error." *Id.* at ¶ 16.

¶ 48    The *Wade* division's application of the holding in *Lee* is consistent with *Stewart* because the supreme court there cabined its ruling to nontactical instructional omissions, holding that where "the omission is strategic, the invited error doctrine should be invoked." *Stewart*, 55 P.3d at 119. Thus, viewing *Lee*, *Wade*, and *Stewart* together, we conclude that it is not error, plain or otherwise, for a court not to instruct the jury on the heat of passion mitigator when it appears that the defendant's failure to submit the instruction was a strategic choice. *See Wade*, ¶ 16; *cf. People v. Close*, 867 P.2d 82, 91 (Colo. App. 1993) (The district court did not err by failing to sua sponte instruct the jury on voluntary intoxication where the failure to tender the instruction could be characterized "as a tactical decision, with the defendant choosing to persuade the jury that he did not commit robbery or attempted murder at all, rather than that he committed the crimes but was too intoxicated to know what he was doing."), *disapproved of on other grounds by Bogdanov v. People*, 941 P.2d 247 (Colo. 1997).

¶ 49    In this case, Vialpando's decision not to tender a heat of passion mitigator instruction appears to have been a tactical choice. Instructing the jury on the mitigator would have given the jury the

22

option to convict Vialpando of a mitigated crime rather than acquitting him altogether. But the prosecution repeatedly conceded at trial that Vialpando acted in self-defense until he hit Gustafson while Gustafson was no longer moving, and Vialpando sought an outright acquittal by arguing that these extra strikes never happened. For example, defense counsel told the jury during closing argument that Vialpando "did not hit [Gustafson] ever, when he did not think [Gustafson] was still a threat," and that "what we know is absolutely not true is that Mr. Gustafson was passed out on the ground when [the strikes] happened."

¶ 50 Providing the jury with the option of convicting Vialpando of a mitigated offense based on striking Gustafson when he was no longer moving[4] would have contradicted Vialpando's position that those strikes never happened. *See Villarreal*, 131 P.3d at 1128 (concluding that "the submission of the [heat of passion] issue to the jury would have been inconsistent with defendant's position at trial, namely, that she was not the attacker and would have had no

---

[4] The jury did not need to be instructed on heat of passion for the portion of the fight before these blows because, as we have mentioned, the prosecution conceded that Vialpando acted in self-defense until then.

23

motive to attack the victim" and, therefore, the absence of the instruction was not plain error). The district court was certainly not required to impose its view of a defense theory over the one chosen by Vialpando. *See id.* Thus, the district court did not err by declining to give the heat of passion instruction sua sponte.

¶ 51 We are not persuaded otherwise by Vialpando's argument that the first degree assault statute does not require a defendant to request a heat of passion instruction. The statute, like other affirmative defense and sentence mitigation provisions, simply does not address when a jury instruction should be given. *See* § 18-3-202(2)(a)-(b); *see, e.g.,* § 18-1-704, C.R.S. 2024 (self-defense affirmative defense); § 18-3-103(3)(a)-(b), C.R.S. 2024 (heat of passion mitigator for second degree murder). Instead, Crim. P. 30 provides that "[a] party who desires instructions shall tender his proposed instructions to the court," and case law establishes the circumstances under which the district court reversibly errs by failing to give an instruction sua sponte, *see Wade,* ¶¶ 7-18; *Lee,* 30 P.3d at 689; *Villarreal,* 131 P.3d at 1125-28; *Close,* 867 P.2d at 90-91.

¶ 52    Finally, even if we assume that it was an error to not give the instruction, the error could not have been obvious — and therefore could not have been plain error.  Two divisions of this court have held that a district court (1) did not err by failing to give a heat of passion instruction when the defendant did not request it, *Lee,* 30 P.3d at 689; and (2) did not plainly err by failing to give a heat of passion instruction when the defendant did not request it and the instruction would have been inconsistent with the defendant's position at trial, *Villarreal,* 131 P.3d at 1128.  Given these cases and despite Vialpando's reliance on *Stewart,* the district court did not commit obvious error by not giving the heat of passion instruction sua sponte.  *See People v. Stroud,* 2014 COA 58, ¶ 33 ("[W]here an alleged error is unclear under present law, the [district] court does not commit plain error.").

## V.    Disposition

¶ 53    The judgment is affirmed.

JUDGE SULLIVAN concurs.

JUDGE TOW specially concurs.

JUDGE TOW, specially concurring.

¶ 54    I agree with the majority that James Delon Vialpando's judgment of conviction should be affirmed.  Indeed, I fully concur with the majority's opinion in Parts II and III, *supra*.  I write separately, however, because I believe we should not even reach his contention regarding the heat of passion mitigator instruction in Part IV.

¶ 55    As Vialpando recognizes, a division of this court held a quarter century ago that "[t]he jury need be instructed as to an affirmative defense or a sentence-mitigating factor only if some evidence presented at trial supports it *and the defendant requests it*." *People v. Lee*, 30 P.3d 686, 689 (Colo. App. 2000) (emphasis added).

¶ 56    Vialpando argues that *Lee* is no longer good law because our supreme court later held that "[w]here it appears that an error or omission in jury instructions is due to inadvertence or attorney incompetence, the reviewing court should apply the doctrine of plain error.  Where, however, the omission is strategic, the invited error doctrine should be invoked." *People v. Stewart*, 55 P.3d 107, 119 (Colo. 2002).

¶ 57    While my colleagues and I are, of course, bound to follow the supreme court's pronouncements, I do not consider *Stewart* to be dispositive of this issue. The omitted instruction in *Stewart* was an affirmative defense. The instruction Vialpando believes should have been given is a sentencing mitigator. I believe the distinction between these two legal concepts is substantial in this context.

¶ 58    Unlike an affirmative defense, which, if found to be applicable, results in an acquittal, a sentence mitigator like heat of passion does not entirely absolve the defendant of criminal culpability. In this way, it is more like a lesser included offense.[1] And the decision to not request a lesser included offense instruction is a strategic call that rests with defense counsel. *Arko v. People*, 183 P.3d 555, 556 (Colo. 2008). As a division of this court has recognized, "A lesser included offense instruction risk[s] a compromise verdict." *People v. Newmiller*, 2014 COA 84, ¶ 26. The same can be said of an instruction on heat of passion — particularly in a case such as this, where the primary defense was self-defense. Indeed, as the

---

[1] I do not intend to suggest that heat of passion *is* a lesser included offense; it is indisputably not one. *Rowe v. People*, 856 P.2d 486, 490-91 (Colo. 1993).

majority acknowledges, the concept of heat of passion directly contradicted the defense's characterization of the facts in this case. *See supra* ¶ 50.

¶ 59 And therein lies the rub. To apply a plain error review to a trial court's decision to refrain from sua sponte instructing on a sentence mitigator puts the trial court in a wholly untenable position. When presiding over a criminal trial, the court has limited information. Often, this information consists of nothing more than the affidavit supporting the arrest. At most, the court obtained a bit more information by presiding over the preliminary hearing and, possibly, hearings on pretrial motions. But the court is not privy to all the discovery in the case. As a result, it cannot possibly know the case well enough to discern whether certain decisions, including

not requesting instructions on lesser included offenses or sentence mitigators, are reasonable strategy or not.[2]

¶ 60    It is axiomatic that "the trial court 'is not an advocate'" and does not serve as counsel for either party. *People v. Wade*, 2024 COA 13, ¶ 11 (quoting *Hansen v. State Farm Mut. Auto. Ins. Co.*, 957 P.2d 1380, 1384 (Colo. 1998)). Requiring the trial court to consider giving such instructions sua sponte necessarily puts the court in the position of overstepping that line by injecting itself into the strategic decision-making process. This is inconsistent with the court's duty to remain impartial.

¶ 61    In my view, it is inappropriate — and frankly unfair to our trial judges — to require them to navigate the ethical equivalent of the path between Scylla and Charybdis in Homer's *Odyssey*: inject such an issue and risk being labelled an advocate — whether "pro-

---

[2] To be blunt, for similar reasons, requiring a trial court to consider a sua sponte instruction on a true affirmative defense (as opposed to an element-negating traverse) is equally untenable. Defense counsel's decision to forgo an instruction on an affirmative defense may well be a strategic decision to avoid presenting the jury with two patently inconsistent theories: "My client didn't do it, and if he did he was justified!" But unless and until the supreme court opts to reconsider this aspect of its decision in *People v. Stewart*, 55 P.3d 107 (Colo. 2002), trial courts will have to continue to grapple with that scenario.

prosecution" for trying to save the People's case or "pro-defendant" for acting as defendant's co-counsel — or decline to inject the issue and risk reversal and being told they obviously should have intervened without the need for an objection (or, here, a request).

¶ 62     The rule should simply be what has previously been stated: Unless requested, no instruction need be given regarding a sentence mitigator or lesser offense. *See Lee*, 30 P.3d at 689. And if such an instruction is not requested, the defendant cannot complain on appeal.[3] Under such a rule, Vialpando's jury instruction challenge would not be reviewed for plain error; it would simply not be before us.

¶ 63     That being said, even if *Stewart* is read broadly, as Vialpando urges, to apply to sentence mitigators, I believe the outcome should be the same: We should decline to review the claim as not being properly before us. The majority observes that "Vialpando's decision not to tender a heat of passion mitigator instruction

---

[3] In those circumstances, which the supreme court apparently felt were before it in *Stewart*, where the strategy was obviously flawed, the defendant would have the remedy of a postconviction challenge at which, *after both sides were given a chance to develop a factual record*, the defendant could seek to establish that counsel's strategy amounted to ineffective assistance.

appears to have been a tactical choice." *Supra* ¶ 49. If that is true, and I agree that it is, then because "the omission is strategic, the invited error doctrine should be invoked." *Stewart,* 55 P.3d at 119.

¶ 64 But invited error is not reviewed for plain error. Rather, "[t]he doctrine of invited error prevents a party from complaining on appeal of an error that [they have] invited or injected into the case." *People v. Rediger,* 2018 CO 32, ¶ 34. In other words, "the invited error doctrine *precludes appellate review* of errors created by a party." *People v. Gross,* 2012 CO 60M, ¶ 8 (emphasis added).

¶ 65 I recognize that, in reviewing for plain error, the majority merely follows the lead of several prior divisions of this court. *See People v. Close,* 867 P.2d 82, 90 (Colo. App. 1993); *Lee,* 30 P.3d at 689; *People v. Villarreal,* 131 P.3d 1119, 1124 (Colo. App. 2005); *Wade,* ¶ 12. But reviewing for plain error — even where no error is found — is nevertheless providing appellate review, which is inconsistent with the invited error doctrine.

¶ 66 Thus, I depart from the majority's exploration of whether the decision not to give the instruction was error in the first place. Because the issue is not properly before us, I would not review it at

all.  Nevertheless, because the majority affirms the judgment of conviction, I concur in the majority's judgment.